TENNESSEE–CAROLINA TRANSPORTATION, INC., Plaintiff-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.

No. 76–2496.

United States Court of Appeals, Sixth Circuit.

Argued April 7, 1978.

Decided Aug. 21, 1978.

---

* Judges RUBIN and VANCE were not members of the court at the time of the submission of this case to the court en banc, and did not participate in the consideration of this decision.

H. Stennis Little, Jr., Little, Thrailkill & Owen, P.C., Nashville, Tenn., for plaintiff-appellant.

Richard L. Hubbard, Washington, D. C., for amicus curiae Continental Corp.

Scott P. Crampton, Asst. Atty. Gen., Michael L. Paup, Alfred S. Lombardi, Attys., Tax Division, U. S. Dept. of Justice, Washington, D. C., Gilbert E. Andrews, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for defendant-appellee.

Before WEICK, CELEBREZZE and KEITH, Circuit Judges.

CELEBREZZE, Circuit Judge.

■ The principal issue presented on appeal is whether the tax benefit rule [1] is applicable to a corporate liquidation governed by Internal Revenue Code § 336. We hold that it is and affirm the decision of the Tax Court.[2]

Taxpayer, Tennessee-Carolina Transportation, Inc., is a Tennessee corporation engaged in the motor freight transportation business. Pursuant to a contract entered into in 1966, taxpayer purchased in January, 1967, all of the capital stock of Service Lines, Inc. (Service). Service was also engaged in the motor freight transportation business. Service was operated temporarily as a wholly owned subsidiary of taxpayer

---

1. The tax benefit rule provides that if an amount which was deducted from gross income in a prior year is recovered in a later year then the amount recovered is included in gross income in the later year. *Alice Phelan Sullivan Corp. v. United States,* 381 F.2d 399, 180 Ct.Cl. 659 (1967). *See generally* 1 J. Mertens, Law of Federal Income Taxation § 7.34. (1974 ed.).

The rule is of judicial origin and has been codified in part in Internal Revenue Code § 111. *Id.*

2. We also affirm the Tax Court on the issue of valuation raised by taxpayer for the reasons set forth in the opinion of the Tax Court.

until March 1, 1967, when it was liquidated and merged into taxpayer. The liquidation consisted of Service distributing all of its assets to taxpayer, its sole shareholder, in exchange for its stock, which was then retired.[3]

Among the assets distributed to taxpayer by Service were truck tires and tubes which Service had purchased for its own use. The expected useful life of these tires and tubes was approximately one year, so Service had properly fully deducted (expensed) their cost when purchased. Pursuant to Internal Revenue Code § 334(b)(2), taxpayer claimed a stepped-up basis in the assets received from Service by allocating the purchase price of the Service stock proportionately to the assets received based on their respective fair market value. Taxpayer thereafter fully deducted the amount so allocated to the tires and tubes as a business expense in the consolidated income tax return it filed with Service for 1967.[4]

The Commissioner of Internal Revenue claimed that the 1967 consolidated return underreported income.[5] The only aspect of this determination now at issue relates to the Commissioner's contention that the tax benefit rule required that Service include as income in 1967 the value of the tires and tubes distributed to taxpayer.[6]

The full Tax Court upheld the Commissioner's position and found a deficiency in income taxes due from taxpayer. 65 T.C. 440 (1975).[7] The court applied the tax ben-

efit rule to require Service to include in its 1967 income an amount equal to the value of the previously expensed but not fully consumed tires and tubes which were distributed to taxpayer. The court rejected as "unduly restrictive" the holding in *Commissioner v. South Lake Farms, Inc.*, 324 F.2d 837 (9th Cir. 1963), which found the tax benefit rule inapplicable to corporate liquidations governed by § 336.

■ Taxpayer argues on appeal that the tax benefit rule operates only when there is a "recovery" of an amount previously deducted. It contends that Service had no "recovery" of its expense deduction for the tires and tubes since it distributed them directly to taxpayer and received nothing in exchange. We reject taxpayer's contentions inasmuch as they would produce an unnecessary disparity between liquidations governed by § 336 and those governed by Internal Revenue Code § 337. Taxpayer's position also asserts a wooden interpretation of the tax benefit rule which we find inappropriate.

The liquidation of Service was effected by distributing Service's assets to its sole shareholder, taxpayer, in exchange for its stock, which was then retired. As to Service, the liquidation was thus governed by the general nonrecognition provisions of § 336.[8] An alternative method of accomplishing the same result would have been for taxpayer to buy all of Service's assets at the same price it paid for Service's stock,

**3.** Internal Revenue Code §§ 332 and 336 provide that, as general rules, "no gain or loss shall be recognized" to taxpayer or Service, respectively, by virtue of this merger.

**4.** The 1967 consolidated return showed a net operating loss, wholly attributable to taxpayer, which was tentatively carried back to reduce taxpayer's tax liability for prior years.

**5.** The Commissioner determined that the 1967 net operating loss was excessive and, consequently, that the tentative loss carryback was excessive.

**6.** Service's 1967 income was reported on the consolidated 1967 return, so increasing its income effectively reduced the taxpayer's net operating loss. The Commissioner conceded that taxpayer was allowed to fully deduct in 1967

the amount allocated to the tires and tubes, which amount was contested, *see* note 2, *supra*, so the increase in Service's income simply cancelled out taxpayer's deduction and reduced the net operating loss by the amount attributable to the tires and tubes.

**7.** One judge filed a concurring opinion and seven judges dissented. *See* O'Hare, *Application of Tax Benefit Rule in New Case Threatens Certain Liquidations*, 44 J.Tax. 200 (1976).

**8.** Internal Revenue Code § 336:

Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation.

with Service then liquidating and distributing the proceeds of the sale to its shareholders. This corporate liquidation would have been governed by the general nonrecognition provisions of § 337.[9] The business consequences of either alternative would have been identical—Service liquidated, Service's shareholders in possession of the proceeds of the sale in exchange for retirement of their stock, and the taxpayer in possession of Service's assets with a basis equal to their purchase price.

■ Taxpayer concedes that if the liquidation of Service had been governed by § 337 the tax benefit rule would apply, overriding the general nonrecognition rule of § 337 and requiring that Service recognize as ordinary income the amount previously expensed. *Anders v. United States*, 462 F.2d 1147, 199 Ct.Cl. 1, *cert. den.* 409 U.S. 1064, 93 S.Ct. 557, 34 L.Ed.2d 517 (1972); *Spitalny v. United States*, 430 F.2d 195 (9th Cir. 1970); *Commissioner v. Anders*, 414 F.2d 1283 (10th Cir. 1969); *S. E. Evans, Inc. v. United States*, 317 F.Supp. 423 (W.D.Ark.1970). There is no reason in either the statute or tax policy for reaching a different result in this case merely because Service and taxpayer chose a § 336 liquidation. In a case applying the assignment of income doctrine to overcome the general nonrecognition provisions of § 337 this court noted that § 336 and § 337 liquidations cannot always be treated alike for tax purposes due to some provisions that are unique to § 337. *Midland-Ross Corp. v. United States*, 485 F.2d 110, 117–18 (6th Cir. 1973).[10] *Midland-Ross* also made it clear, however, that as a general rule § 336 and § 337 liquidations were to be treated alike. *Id.* at 114 ("parity of tax treatment at the corporate level") *and* 117 ("purpose of establishing a parity between Sections 336 and 337"). Section 336 liquidations are to be treated like § 337 liquidations as a general rule unless some peculiar provision of § 337 justifies disparate treatment.[11] No such statutory justification exists here.

There is no support for the contention that § 337 was "designed to be a shield for taxpayers and not a sword to be used against them," as contended by the dissenters here and in the Tax Court. Section 337 "was designed to eliminate the formalistic distinctions recognized and perhaps encouraged by the decisions in *Court Holding* and *Cumberland*.[12]" *Central Tablet Mfg. Co. v. United States*, 417 U.S. 673, 682, 94 S.Ct. 2516, 2521, 41 L.Ed.2d 398 (1974). Taxpayer and the dissent would have us resurrect these precise formalistic distinctions.

9. Internal Revenue Code § 337(a):

(a) General rule.—If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

10. In particular, we noted § 337(b)'s unique denial of nonrecognition to gain or loss from sales in the ordinary course of business during the relevant twelve-month period.

11. *See* B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 11.62, p. 11–52 and ¶ 11.65, p. 11–72 (3d ed. 1971) (hereinafter Bittker). This authority notes that applying the tax benefit rule to § 336 liquidations is the better result. It also suggests that courts may be hesitant to apply the rule in this context, citing, *inter alia, Commissioner v. South Lake Farms, Inc.*, 324 F.2d 837 (9th Cir. 1963), but we believe that we should not hesitate to avoid inequities in the tax laws which are not specifically mandated by Congress.

12. The cases referred to are *Commissioner v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945) and *United States v. Cumberland Public Service Co.*, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950). *Court Holding* "held that a liquidating corporation could not escape taxation on the gain realized from the sale of its sole asset if the corporation itself had arranged the sale prior to liquidation and distribution of the asset to the shareholders. This was so even though the sale was consummated after the distribution." 417 U.S. at 679, 94 S.Ct. at 2520. *Cumberland* "reached exactly the opposite conclusion in a case where the shareholders, rather than the corporation, had negotiated the sale of the distributed assets and, prior to the corporation's liquidation, had been in touch with the purchaser and had offered to acquire the property and sell it to the purchaser." 417 U.S. at 680, 94 S.Ct. at 2520. *See generally* 417 U.S. at 678–83, 94 S.Ct. 2516.

Taxpayer seems to realize the disparity its position would sanction but nevertheless argues that the tax benefit rule is inapposite to § 336 since it cannot conceptualize any "recovery" by Service of the previously deducted amount. There are several answers to this contention.

■■■ First, there need not be an actual physical "recovery" of some tangible asset or sum in order to apply the tax benefit rule.[13] The tax benefit rule should be applied flexibly in order to counteract the inflexibility of the annual accounting concept which is necessary for administration of the tax laws. The rule should apply whenever there is an actual recovery of a previously deducted amount *or* when there is some other event inconsistent with that prior deduction. *See Block v. Commissioner,* 39 B.T.A. 338, 340–41 (1939), *aff'd sub nom. Union Trust Co. v. Commissioner,* 111 F.2d 60 (7th Cir.), *cert. den.* 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940). Here the transfer to taxpayer with a stepped-up basis, pursuant to § 334(b)(2), of the tires and tubes which had a substantial useful life remaining was inconsistent with the prior expensing of them, which indicated they had been or would be totally used up by Service. This inconsistency is enough to invoke the tax benefit rule.[14]

Second, even if a "recovery" is required to apply the tax benefit rule, there was such a recovery here. When the tires and tubes were expensed by Service they were, in contemplation of the tax laws, completely consumed. They had a zero basis and were considered a nonentity, but only in contemplation of their actual consumption by Service. At the time of the liquidation, an event of significance in the tax laws, they were transferred to taxpayer as a usable entity. This transfer belied the assumption that they would be wholly consumed by Service. Thus, in order for Service to be able to transfer them to taxpayer they must be deemed to have been recovered by Service at that time, as the Tax Court held. Taxpayer objects to this, claiming it is a "fictional" recovery. In a sense it is fictional but certainly no more so than the initial fiction that the tires and tubes would be completely consumed by Service in about one year in order to justify their being expensed. Taxpayer cannot equitably argue that Service should have the benefit of fictionally converting the tires and tubes into a nonentity (by expensing them) yet not have the burden of having them fictionally reconverted into tangible property (by applying the tax benefit rule). *Spitalny v. United States,* 430 F.2d 195, 198 (9th Cir. 1970).

Third, again assuming there need be an actual "recovery" in order to apply the tax benefit rule, there was a recovery here in another sense. Service received its own stock in exchange for the assets transferred to taxpayer. It is true that this stock had no value *after* the liquidation was completed, but it had considerable value *at the time it was returned* to Service. This is enough to satisfy any need for a "recovery" by Service in order to apply the tax benefit rule.[15]

*United States v. Nash,* 398 U.S. 1, 90 S.Ct. 1550, 26 L.Ed.2d 1 (1970), is relied upon by taxpayer but does not support its position. *Nash* involved a § 351 incorporation in which accounts receivable were transferred by the taxpayers to newly formed corporations. The taxpayers, be-

---

**13.** We reject the contrary holding in *Commissioner v. South Lake Farms, Inc.,* 324 F.2d 837 (9th Cir. 1963). *See* Rev.Rul. 77–67, 1977–1 C.B. 33; Rev.Rul. 74–396, 1974–2 C.B. 106.

**14.** Moreover, by taking advantage of § 334(b)(2)'s stepped-up basis provision, taxpayer is employing a statutory device which recognizes that, in some circumstances, a purchase of stock is essentially a purchase of assets, thus giving the assets their pro rata share of the basis of the stock. This is wholly incon-sistent with taxpayer's assertion that Service had no "recovery".

**15.** This is consistent with the general rule expressed in Internal Revenue Code § 331(a) that amounts distributed on liquidation are to be treated as payment in exchange for the retired stock. While retirement of stock on liquidation is not completely analogous to a sale, the tax laws have treated this as a sale almost continuously since 1924. Bittker ¶ 11.01, p. 11–2 & 3.

fore incorporation, had established a bad debt reserve and taken appropriate deductions. The Supreme Court held that the taxpayers did not "recover" the amount of the bad debt reserve upon incorporation. The reason, however, was that they had only transferred the *net value* of the receivables (face amount less bad debt reserve) to the new corporations and had received in exchange stock worth that net value. *Id.* at 4, 90 S.Ct. 1550. Thus, unlike the instant case, in *Nash* the taxpayers did *not* transfer an item (or any portion thereof) which had been the subject of a prior deduction, but rather transferred only what was left after the deduction. Here, Service clearly transferred items which had been the subject of prior deductions. Furthermore, in *Nash* the bad debt reserve deduction reflected business reality since only the net value of the receivables could realistically be collected; here the expense deduction did not reflect business reality *since* the tires and tubes were not in fact consumed by Service. *Nash* simply does not stand for the proposition, for which it is cited by taxpayer, that the tax benefit rule only applies in the case of an actual physical, as opposed to "fictional," recovery of a previously deducted amount.

The fundamental inequity of the result urged by taxpayer is that it would treat like cases differently. Sometimes an express statutory command necessitates this but that is not the case here. Indeed, § 337 was meant to work precisely the opposite result and do away with most "formalistic distinctions" between liquidations involving distributions in kind and sales of assets. We refuse to elevate form over substance by reviving technical differentiations put to rest in 1954 with the adoption of § 337.[16]

The judgment of the Tax Court is affirmed.

WEICK, Circuit Judge, concurring and dissenting.

I concur in the majority's judgment with respect to the valuation of the tires and tubes, but dissent from that portion of the judgment which holds the tax benefit rule applicable to a liquidation in kind under 26 U.S.C. § 336.

The tax benefit rule provides that "if an amount deducted from gross income in one taxable year is recovered in a later year, the *recovery* is income in the later year." [Emphasis added.] 1 Mertens, Law of Federal Income Taxation § 7.34, at 111 (rev. ed. 1974).

The rule is one of judicial origin. Although not expressly stated in the Internal Revenue Code, it has received indirect statutory recognition specifically with respect to bad debts, prior taxes, and delinquency amounts, in 26 U.S.C. § 111. The rule of the statute has been broadened by the Treasury Regulations to include the recovery of "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years . . .." Treas.Reg. § 1.111(a).

In order to sustain the application of the tax benefit rule to the facts of this case, the majority holds that an actual economic recovery is not required for an application of the rule; rather, it concludes that the tax benefit rule is apposite in situations in which "there is some other event inconsistent with [the] prior deduction." This reasoning stems from the following language used by the Tax Court in *Estate of Block*, 39 B.T.A. 338, 341 (1939), *aff'd sub nom., Union Trust Co. v. Commissioner of Internal Revenue*, 111 F.2d 60 (7th Cir.), cert. denied, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940):

**16.** *See generally* O'Hare, *Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders,* 27 Tax L.Rev. 215 (1972). Therein the author suggests that a statute may be necessary to reach the result announced herein, but we feel a statute is not necessary for the reasons set forth above. Rather, we agree with the author's conclusion

that refusal to apply the tax benefit rule to cases like this one "resurrects a discrepancy in tax treatment between pre-liquidation and post liquidation sales which section 337 was intended to eliminate." *Id.* at 240. We also note that refusal to apply the tax benefit rule here would result in "another tax trap . . . for the unwary" which would be "questionable as a matter of tax policy." *Id.* at 245.

Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. When recovery or *some other event which is inconsistent with what has been done in the past* occurs, adjustment must be made in reporting income for the year in which the change occurs. [Emphasis added]

This statement, however, is nothing more than dictum. In *Estate of Block, supra,* there was an actual economic recovery of the prior tax benefit by way of the refund of federal estate taxes, which taxes had formed the basis of the previous deduction.

Neither the majority, the majority of the Tax Court,[1] nor the Commissioner has cited a single case in which the tax benefit rule has been applied solely on the basis of the occurrence of an event which was inconsistent with a previous deduction. To the contrary, the salient feature of every case cited by them, in which the rule was applied, is the presence of an actual economic recovery by the taxpayer, either (1) by way of receipt of funds, *e. g., Citizens' Acceptance Corp. v. United States,* 462 F.2d 751 (3d Cir. 1972); *Anders v. United States,* 462 F.2d 1147, 199 Ct.Cl. 1, *cert. denied,* 409 U.S. 1064, 93 S.Ct. 557, 34 L.Ed.2d 517 (1972); *Spitalny v. United States,* 430 F.2d 195 (9th Cir. 1970); *Alice Phelan Sullivan Corp. v. United States,* 381 F.2d 399, 180 Ct.Cl. 659 (1967); or (2) by way of a discharge of an accrued liability resulting in an increase in the taxpayer's net worth, *e. g., Mayfair Minerals, Inc. v. Commissioner of Internal Revenue,* 456 F.2d 622 (5th Cir. 1972); *Bear Mfg. Co. v. United States,* 430 F.2d 152 (7th Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 632 (1971); *North Am. Coal Corp. v. Commissioner of Internal Revenue,* 97 F.2d 325 (6th Cir. 1938). Furthermore, the regulations under the statutory tax benefit rule, 26 U.S.C. § 111, require that there be an actual recovery of the prior tax benefit. Treas.Reg. § 1.11–1.

In *United States v. Nash,* 398 U.S. 1, 90 S.Ct. 1550, 26 L.Ed.2d 1 (1970), the Supreme Court refused to apply the tax benefit rule to a situation in which there was no actual economic recovery of the previous tax benefit. There the Commissioner argued that upon the transfer of accounts receivable to a corporation as a part of a 26 U.S.C. § 351 incorporation, the unused portion of a bad debt reserve was includable in the taxpayer's income under the tax benefit rule because the "need" for the reserve had ended. The Court rejected this contention on the ground that the termination of the need for the reserve was not the equivalent of a recovery of the deductions which gave rise to the reserve for the purposes of the tax benefit rule. The Court implied, however, that had there been an actual economic recovery by the taxpayer, that is, by the receipt of securities for the accounts receivable, the value of which exceeded the receivables' net worth (the difference in the face value of the receivables less the bad debt reserve), the tax benefit rule would have been applicable.

I can see no difference between the "end of the need" argument set forth by the Government in *Nash* and the "inconsistent event" rationale used by the majority in this case. Certainly, were it not for *Nash,* Service's liquidation could have been characterized as the end of the need for the expense deduction relating to the tires and tubes, just as easily as the transfer in *Nash* of the accounts receivable to the corporation (prior to the time when the bad debts were actually realized) could have been characterized as an event inconsistent with the previous deduction of the bad debts. I cannot believe that this difference in semantics has a meaningful distinction for purposes of the tax laws.

Although the majority cogently points out the factual distinctions between the instant case and *Nash,* its attempt to distinguish the two on that factual basis fails because it does not take into account the pivotal factor in the Supreme Court's determination of *Nash,* namely, the failure of the taxpayer actually to recover economically the bad debt deduction. In the present case, as will be shown below, it was Ser-

---

1. In the Tax Court only one Judge filed a concurring opinion and seven Judges dissented.

vice's shareholders (not Service) who in reality recovered the tax benefit resulting from Service's expensing the tires and tubes at the time of their acquisition. Service, like the taxpayer in *Nash*, had no economic recovery of its prior tax benefit; rather, like the Section 351 incorporation in *Nash*, the liquidation merely ended Service's need for the deduction. This is not in my opinion, sufficient reason for an application of the tax benefit rule.

Adopting the reasoning of the majority of the Tax Court, the majority alternatively holds that even if an actual economic recovery is needed for the application of the tax benefit rule, such a recovery has occurred in this case. The recovery consists of a fictional receipt by Service immediately prior to its liquidation, of tires and tubes equal in value to the tires and tubes it distributed upon liquidation.[2]

This fictional receipt of tires and tubes by Service when it was already in possession thereof, is regarded by the majority as an event of independent significance which, consequently, is not subject to the non-recognition provisions of 26 U.S.C. § 336,[3] but which rather constitutes a recovery within the meaning of the tax benefit rule.

Despite the fictional receipt of tires and tubes, it is undeniable that in actuality, Service received no economic benefit upon liquidation.

In a liquidation under 26 U.S.C. §§ 332 and 334(b)(2) the value of the liquidating corporation's previously expensed assets is reflected in the amount paid to its shareholders for their stock. The liquidating corporation itself, however, receives nothing upon the sale of its stock by its shareholders. When the liquidating corporation distributes its previously expensed assets in kind upon liquidation, again it receives nothing for its assets except its own stock, which stock has no value upon the termination of the corporation's business and distribution of assets.[4] Thus the liquidating corporation receives no economic benefit upon liquidation, even though it was able to transmit to its shareholders the economic benefit from previously expensing its assets. Because a liquidating corporation receives no economic benefit upon a liquidation in kind, I would hold that the tax benefit rule is inapplicable to such liquidations.

Furthermore, it is undisputed that Service had properly expensed the tires and

2. The Tax Court majority created this fiction by the following reasoning:

Service was permitted to expense the cost of the tires and tubes which it purchased, on the assumption that their useful life would be fully exhausted in its operations. Once Service had expensed their cost, the tires and tubes were therefore deemed to have been fully consumed in its operations for purposes of Federal income taxation whatever their fair market value may have been. If, having expensed the cost of the tires and tubes Service subsequently treated them as property having a fair market value in a transaction of consequence in the scheme of Federal income taxation, it would therefore necessarily be deemed to have received tires and tubes identical to them immediately prior to that transaction. *Anders v. United States*, 462 F.2d 1147, 1149, [199 Ct.Cl. 1] [30 AFTR 2d 72–5138] (Ct.Cl.1972), cert. denied 409 U.S. 1064 (1972); *Spitalny v. United States*, 430 F.2d 195, 197–198 [26 AFTR 2d 70–5351] (9th Cir. 1970).

When Service was liquidated, among the property which it distributed to petitioner, its sole shareholder, were tires and tubes having a fair market value of $36,394.67. Service

had previously expensed the cost of these items. It must therefore be deemed to have received immediately prior to its liquidation, tires and tubes equal in value to those which it distributed.

3. Section 336 provides:

Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation.

4. The majority also holds that if an economic recovery is required for an application of the tax benefit rule, such a recovery is evinced by Service's receipt of its own stock in the liquidation. I fail to comprehend how this can constitute a recovery of a previous tax benefit. Certainly, it cannot be denied that the stock has *no* value upon the liquidation of the corporation. Where then is the requisite economic recovery necessary for an application of the tax benefit rule? Moreover, to attribute an economic recovery to the liquidating corporation from the transfer of its assets for its stock would circumvent the explicit nonrecognition language of 26 U.S.C. § 336.

tubes upon their acquisition. It owed no tax to the Government as a result thereof. Upon its liquidation under Section 336, Service's shareholder (*i. e.,* taxpayer) was entitled to receive the tires and tubes in the same condition as when possessed by Service and without any lien imposed thereon for taxes based upon an unfounded theory of a fictional receipt by Service of tires and tubes equal in value to those distributed by it upon liquidation.

In the only appellate case directly in point, namely, *Commissioner of Internal Revenue v. South Lake Farms, Inc.,* 324 F.2d 837 (9th Cir. 1963), a panel majority of the Ninth Circuit refused to apply the tax benefit rule to a liquidation in kind because the liquidating corporation received no economic benefit upon liquidation. In that case South Lake Farms, Inc. was engaged in farming. In September 1956 an unrelated party, South Lake Farms, after arm's length negotiations with the shareholders of South Lake Farms, Inc., purchased all the stock of the corporation with the intent of liquidating it. The purchase price of the stock reflected the value of certain expenses incurred by South Lake Farms, Inc. in raising a cotton crop scheduled to be harvested in October 1956, and in preparing certain lands for the 1957 barley crop. South Lake Farms, Inc. was liquidated and its assets distributed in kind before it could reap what it had sown. On its final tax return South Lake Farms, Inc. deducted the expenses incurred in preparing the land for the barley crop and in raising the cotton crop. No income was reported, however, because unharvested crops could not be inventoried and the cotton crop was harvested after liquidation. As a result of these events South Lake Farms, Inc. was able to claim a current operating loss and a carryback loss for the two prior years.

The Commissioner assessed a deficiency against South Lake Farms, Inc. Throughout the course of the litigation he asserted several theories under which the value of both the unharvested cotton crop and the cost of preparing the land for the barley crop should be recognized as income to the liquidating corporation. On appeal from an adverse decision of the Tax Court, the Com-

missioner raised for the first time the question of applicability of tax benefit principles.

In rejecting the Commissioner's contention, the majority of the court stated:

Essentially, the Commissioner's position is that the old corporation got a "tax benefit" by deducting these expenses, all of which had been incurred or paid before liquidation. Such deduction was proper when taken. The contention is that because the price of the stock of the old corporation, which was sold to the new corporation, was fixed in part on the basis of the value of the cotton crop, and of the preparation of the land for a barley crop, and because an actual allocation of a portion of that price was made to those items, for the purpose of fixing the new corporation's basis under section 334, the old corporation received an amount equivalent to, and sufficient to offset, the expenses that it had incurred, and hence was no longer entitled to the "tax benefit" of the deduction of those expenses.

One immediate difficulty with this contention is that the old corporation received nothing. It was the stock of the old corporation that was sold, and the stockholders who got the money. The price that they got was higher because of the values added to the old corporation's assets by the expenditures that were made in preparing the barley lands and in preparing, planting, and growing the cotton crop. No doubt they paid tax on the increased gain. Nowhere in the Code do we find an intent that gains of the stockholders were to be attributed to the corporation, much less that they were to be treated as ordinary income to the corporation. The corporation is to be taxed only on its own income. (*Cf. Family Record Plan, Inc. v. Commissioner [of Internal Revenue,]* supra, at 210 of 309 F.2d [208]) [*Id.* at 839]

. . . . .

The result in this case is something of a tax windfall to the stockholders of the old corporation. They got a price for their stock that was enhanced by their corporation's expenditures, which were deducted from its income, thereby reducing its in-

come taxes, even though it never got the income that the expenditures were expected to produce. It may be that if Congress had considered the problem now before us when it enacted sections 334, 336, and 337 of the Internal Revenue Code, it would have inserted language designed to reach . . . the results here sought by the Commissioner. But it did not do so. [*Id.* at 840]

The majority rejects the decision of the Ninth Circuit in *South Lake Farms, Inc.,* and refuses to follow it. This results in a conflict in the Circuits' decisions.

I agree with the Ninth Circuit's decision. Service had no actual recovery subsequent to its liquidation. It had previously paid for the tires and tubes and, undeniably, it had properly expensed them at the time of their acquisition or use. Upon liquidation Service received nothing of economic value to set off against the tax benefit obtained by deducting the cost of the tires and tubes.

Again, neither the majority of the panel, the Tax Court majority nor the Commissioner has cited a single case in which the tax benefit rule has ever been applied solely on the basis of a fictional recovery of past deductions. To the contrary in every case cited by them, it was an actual economic recovery which triggered the application of the tax benefit rule. *See* cases cited *supra.* Underlying the fictional recovery applied both by the majority of this panel and by the majority of the Tax Court, there is a reliance on two cases which have held the tax benefit rule applicable to liquidations under 26 U.S.C. § 337,[5] namely, *Anders v. United States, supra,* and *Spitalny v. United States, supra.*[6] In each of these cases the Courts, as does the majority and the Tax Court majority, reconverted into property previously expensed assets. The fictional reconversion in *Anders* and *Spitalny,* however, did not constitute the requisite recovery for tax benefit purposes, but rath-

er, was used to circumvent the nonrecognition provision of Section 337 so that the tax benefit rule could be applied. In a Section 337 liquidation, in contrast to a liquidation involving Section 336, the liquidating corporation clearly recovers the tax benefit obtained by expensing assets at the time of their acquisition through the sale of the previously expensed assets. This sale increases the liquidating corporation's net worth.

In applying the tax benefit rule to liquidations in kind, the Tax Court majority is obviously concerned with creating a parity in the tax treatment between liquidations under Section 337 and those liquidations involving Section 336. *Compare Midland-Ross Corp. v. United States,* 485 F.2d 110 (6th Cir. 1974); *John T. Stewart, III Trust,* 63 T.C. 682 (1975).

In enacting Section 337, Congress did not evince an intent that all liquidations which utilize Section 336 have the identical tax result at the corporate level as a Section 337 liquidation. To the contrary, Congress was concerned with eliminating only the differences between *Court Holding Company* liquidations (324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945)) and *Cumberland Public Service Company* liquidations (338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950)), so that the tax consequences at the corporate level would be the same whether the liquidating corporation sold its assets and then distributed the proceeds to its shareholders in complete liquidation, or distributed its assets in kind to its shareholders for sale by them. *Central Tablet Mfg. Co. v. United States,* 417 U.S. 673, 678–82, 94 S.Ct. 2516, 41 L.Ed.2d 398 (1974); *Midland-Ross Corp. v. United States, supra,* at 114–115, and authorities cited therein.

In attempting to create absolute parity in taxation results between all liquidating transactions which utilize Section 336 and those liquidations which utilize Section 337,

---

5. Section 337 provides in pertinent part:

　(a) General Rule.—If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or

loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

6. The panel majority relies on only *Spitalny v. United States, supra,* while the Tax Court majority relies on both cases.

388

the majority and the Tax Court majority have gone beyond the purpose underlying the enactment of Section 337. Moreover, in justifying the application of the tax benefit rule to the facts of this case by relying on Section 337 cases, they fail to perceive that Section 337 was enacted as a shield to protect the taxpayer, and not as a sword to be utilized by the Government.[7]

If there is to be parity in tax treatment under the two sections, the tax results dictated by Section 336 should control Section 337, and not vice versa. See *Midland-Ross Corp. v. United States, supra,* at 118.

7. One additional factor militates against the application of the tax benefit rule to the facts of this case. That factor is a double taxation (once at the shareholder level and again at the corporate level), of the economic value of the previously expensed but unused tires and tubes. It can be assumed that in purchasing Service's stock, the taxpayer paid Service's shareholders a price which included the value of the tires and tubes in its inventory. *Commissioner of Internal Revenue v. South Lake Farms, Inc., supra* at 839. Thus Service was able to transmit to its shareholders the benefit of the economic value of the previously expensed assets. The shareholders of Service undoubtedly paid a greater tax on the gain resulting from the sale of their shares of stock in Service because of the higher price paid to them for their stock, which higher price resulted from Service's possession of the tires and tubes. *Id.* at 839. The majority's application of the tax benefit rule to the liquidation in kind results in income to Service by reason of its recovery of its previous deduction of the tires and tubes. This income is taxed to Service, resulting in a second tax on the economic value of the tires and tubes, at the corporate level.

Had Service been liquidated pursuant to Section 337, the economic value of tires and tubes would have been taxed only once, that is, as a result of Service's actual recovery of the previous deduction of their cost.