**BALLOU CONSTRUCTION COMPANY, INC., as Transferee of Salina Sand Company, Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 79–4138.**

United States District Court, D. Kansas.

Aug. 4, 1981.

Tom W. Hampton of Hampton, Royce, Engleman & Nelson, Salina, Kan., for plaintiff.

G. Scott Nebergall, Trial Atty., Tax Division-Dept. of Justice, Washington, D. C., James P. Buchele, U. S. Atty., Topeka, Kan., Karen Humphreys, Topeka, Kan., Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action for the recovery of federal income taxes paid by Ballou Construction Company, Inc. [hereinafter referred to as "Ballou"], as the transferee of Salina Sand Company, Inc. [hereinafter referred to as "Salina Sand"], for the taxable period ended March 31, 1977. The facts are not in dispute and both parties have moved for summary judgment. Oral argument was had and the court is now prepared to rule.

FACTS

Salina Sand was organized under the laws of the State of Kansas in September, 1955. During the course of its existence, Salina Sand was engaged in the business of extracting, processing, and selling sand and gravel from various sand and gravel pits located in Saline County, Kansas. Salina Sand kept its books and filed its income tax returns on the basis of an accrual method of accounting, with a fiscal and taxable year beginning on July 1, and ending on June 30, except for its final fiscal period which began July 1, 1976, and ended March 31, 1977.

On March 1, 1977, the shareholders of Salina Sand entered into an agreement to sell all of their stock in the company for a purchase price of $750,000. The purchaser of the stock was the plaintiff, Ballou, also a Kansas corporation. Salina Sand remained in operation through March 31, 1977. On the following day, Salina Sand was liquidat-

ed and dissolved pursuant to section 332.[1] Pursuant to the plan of liquidation, Salina Sand transferred all of its assets to Ballou, effective March 31, 1977, and Salina Sand was thereupon dissolved in accordance with the laws of the State of Kansas. Salina Sand filed its final tax return for the period July 1, 1976, to March 31, 1977.

One of the assets owned by Salina Sand at the time of liquidation was identified as "Sand Deposit in Place." This asset represented the amount of sand which Salina Sand had processed through the first stage of mining,[2] but which had not yet produced income in the normal course of business. Under Salina Sand's method of accounting, the costs of removing overburden were deducted as they incurred; income however was not realized until the sand or gravel was sold.[3]

Upon liquidation, the asset "Sand Deposit in Place" [4] was transferred to Ballou. Pursuant to section 334(b)(2), Ballou claimed a stepped-up basis in the assets received from Salina Sand by allocating the purchase price of the Salina Sand stock proportionately to the assets received based on their respective fair market value. The asset "Sand Deposit in Place" was allocated a basis of $100,000. Subsequently Ballou took business expense deductions totalling $100,000 as a part of the cost of goods sold, representing its utilization of the asset "Sand Deposit in Place."

In the examination of the final income tax return of Salina Sand, the Commissioner of Internal Revenue determined that Salina Sand had realized additional gross income in the amount of $20,000 for recovery of the costs of removing overburden which had been deducted by Salina Sand. In other words, the Commissioner decided that Salina Sand had deducted certain costs incurred in the acquisition of the sand and gravel in place but had not recognized any income on the disposition of such sand and gravel in place as a result of the liquidation and dissolution of Salina Sand. The Commissioner determined that such a "tax benefit" must be recognized by Salina Sand in its final tax period. Therefore, the Commissioner increased the taxable income of Salina Sand for its final taxable period by $20,000 and such adjustment in the taxable income resulted in a federal income tax deficiency of $9,600. The deficiency together with the interest thereon was subsequently paid by Ballou, as the transferee of Salina Sand, and this action was brought to recover such amount and interest.

DISCUSSION

The primary issue to be determined in this matter is whether the tax benefit rule should be applied in corporate liquidations governed by section 336. Section 336 provides:

> Except as provided in section 453(d) [relating to the disposition of installment obligations], *no gain or loss shall be recognized* to a corporation on the distribution of property in partial or complete liquidation. (emphasis supplied.)

The liquidation of Salina Sand was effected by distributing Salina Sand's assets to its sole shareholder, the plaintiff, in exchange for its stock, which was then retired. As to Salina Sand, the liquidation was thus governed by the general nonrecognition provisions of section 336.

---

1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

2. The mining and processing of sand can be segregated into three major stages: (1) the removal of dirt and silt commonly referred to as "overburden" located above the sand layer; (2) the pumping of sand from the pit to the processing equipment; and (3) cleansing and separation into various types of sand products with repeated washing and filtering of a raw product taken from the pit. The first stage of removal of overburden is accomplished by the scraping and hauling away of the dirt and silt layers, with heavy construction machinery.

3. The Commissioner of Internal Revenue has not contended that this method of accounting did not accurately reflect the income of Salina Sand during any of its taxable years or in its final taxable period.

4. The parties have agreed that the asset "Sand Deposit in Place" was enhanced in value by $20,000 as a result of the removal of overburden from the asset.

The tax benefit rule provides that "if an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." 1 Mertens, *Law of Federal Income Taxation*, § 7.34, at 111 (1974 ed.). The rule is of judicial origin. *See Block v. Commissioner*, 39 B.T.A. 338 (1939), aff'd sub nom., *Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir. 1940), *cert. denied*, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940); *Alice Phelan Sullivan Corp. v. United States*, 381 F.2d 399 (Ct.Cl.1967). However, the rule has been indirectly sanctioned and acknowledged in section 111 of the Internal Revenue Code with respect to bad debts, prior taxes, and delinquency amounts. The Treasury Regulations on Income Tax have broadened the rule of § 111 to include "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years...." Treas. Reg. § 1.111–1(a).

It is defendant's position that Salina Sand received a tax benefit because it deducted the costs of removing the overburden from the asset "Sand Deposit in Place" and did not recognize income on the disposition of such sand and gravel in place as a result of its subsequent liquidation and dissolution. Defendant contends that unless Salina Sand is required to recapture its prior deduction under the tax benefit rule, the cost of the asset will have been deducted twice, once by Salina Sand before any income was recognized from the property and once by Ballou as a portion of its costs of goods sold. Plaintiff argues primarily that the tax benefit rule should not be applied in the instant case because Salina Sand had no "recovery" of its expense deduction for the removal of overburden from the asset "Sand Deposit in Place" since it distributed its assets directly to Ballou and received nothing in exchange.

Plaintiff relies upon *Commissioner v. South Lake Farms, Inc.*, 324 F.2d 837 (9th Cir. 1963), for support in this action. In that case, South Lake Farms, Inc., was engaged in farming. In 1956, it incurred certain expenses in planting and cultivating a cotton crop and in preparing land for the raising of barley. Prior to harvesting the cotton crop and planting the barley crop, the stock of the corporation was sold to another corporation in an arm's length transaction. After the sale of the stock, but prior to the harvesting of the cotton crop or the planting of the barley crop, the purchasing corporation liquidated its newly acquired subsidiary. On its final income tax return, South Lake Farms, Inc., deducted the expenses incurred in preparing the land for the barley crop and in raising the cotton crop. No income was reported, however, because unharvested crops could not be inventoried and the cotton crop was harvested after liquidation. Pursuant to section 334(b)(2), the assets received by the purchasing corporation on the liquidation acquired a basis equal to the purchase price of the stock. The Commissioner determined that both the unharvested cotton crop and the cost of preparing the land for the barley crop should be recognized as income to the liquidated corporation. In the Tax Court, the case was decided adversely to the Commissioner. *Commissioner v. South Lake Farms, Inc.*, 36 T.C. 1027 (1961).

On appeal, the Commissioner raised for the first time the question of the applicability of the tax benefit rule. The Ninth Circuit Court of Appeals rejected the Commissioner's contention that the tax benefit rule should be applied and stated:

Essentially, the Commissioner's position is that the old corporation got a "tax benefit" by deducting these expenses, all of which had been incurred or paid before liquidation. Such deduction was proper when taken. The contention is that because the price of the stock of the old corporation, which was sold to the new corporation, was fixed in part on the basis of the value of the cotton crop, and of the preparation of the land for a barley crop, and because an actual allocation of a portion of that price was made to those items, for the purpose of fixing the new corporation's basis under section 334, the old corporation received an amount equivalent to, and sufficient to offset, the

expenses that it had incurred, and hence was no longer entitled to the "tax benefit" of the deduction of those expenses.

One immediate difficulty with this contention is that the old corporation received nothing. It was the stock of the old corporation that was sold, and the stockholders who got the money. The price that they got was higher because of the values added to the old corporation's assets by the expenditures that were made in preparing the barley lands and in preparing, planting, and growing the cotton crop. No doubt they paid tax on the increased grain. Nowhere in the Code do we find an intent that gains of the stockholders were to be attributed to the corporation, much less that they were to be treated as ordinary income to the corporation. The corporation is to be taxed only on its own income. (Cf. *Family Record Plan, Inc. v. Commissioner*, supra, at 210 of 309 F.2d [208])

. . . . .

The result in this case is something of a tax windfall to the stockholders of the old corporation. They got a price for their stock that was enhanced by their corporation's expenditures, which were deducted from its income, thereby reducing its income taxes, even though it never got the income that the expenditures were expected to produce. It may be that if Congress had considered the problem now before us when it enacted sections 334, 336, and 337 of the Internal Revenue Code, it would have inserted language designed to reach . . . the results here sought by the Commissioner. But it did not do so.

324 F.2d at 839–40.

On the other hand, the defendant in this action relies heavily upon *Tennessee-Carolina Transportation, Inc. v. Commissioner*, 582 F.2d 378 (6th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979) for support and attempts to distinguish *South Lake Farms*. In *Tennessee-Carolina Transportation*, the taxpayer, a motor freight transportation company, purchased all of the capital stock of Service Lines, Inc., also a motor freight company. Prior to this acquisition, Service Lines had purchased for its own use certain truck tires and tubes, the expected useful life of which was approximately one year. Service Lines properly deducted the full cost of the tires and tubes as an expense when purchased. But although fully expensed, the tires and tubes were still of substantial value at the time of the stock acquisition. Two months after the acquisition, when Service Lines was liquidated and merged into its new parent, the parent, pursuant to section 334(b)(2), claimed a basis in the tires and tubes, stepped up to reflect their fair market value.

The Sixth Circuit Court of Appeals held that Service Lines had to include as income the value of the tires and tubes which it distributed in liquidation. Rejecting *South Lake* and the arguments that the tax benefit rule could not be invoked because Service Lines had not actually "recovered" the tubes or tires or directly received anything in exchange for them, the court concluded that the inconsistency between the earlier deduction and the later distribution of assets was sufficient to trigger the application of the rule. The court reasoned:

> [T]here need not be an actual physical "recovery" of some tangible asset or sum in order to apply the tax benefit rule. The tax benefit rule should be applied flexibly in order to counteract the inflexibility of the annual accounting concept which is necessary for administration of the tax laws. The rule should apply whenever there is an actual recovery of a previously deducted amount *or* when there is some other event inconsistent with that prior deduction. *See Block v. Commissioner*, 39 B.T.A. 338, 340–41 (1939), *aff'd sub nom. Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir.), *cert. den.* 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940). Here the transfer to taxpayer with a stepped-up basis, pursuant to § 334(b)(2), of the tires and tubes which had a substantial useful life remaining was inconsistent with the prior expensing of them, which indicated they had been or

would be totally used up by Service. This inconsistency is enough to invoke the tax benefit rule.

582 F.2d at 382.

After due consideration of both *Tennessee-Carolina Transportation* and *South Lake Farms* and the arguments and reasoning contained therein, we choose to follow *South Lake* and the dissent filed in *Tennessee-Carolina Transportation.*[5] In his dissent in *Tennessee-Carolina Transportation,* Judge Weick stated:

> I agree with the Ninth Circuit's decision [*South Lake Farms*]. Service had no actual recovery subsequent to its liquidation. It had previously paid for the tires and tubes and, undeniably, it had properly expensed them at the time of their acquisition or use. Upon liquidation Service received nothing of economic value to set off against the tax benefit obtained by deducting the cost of the tires and tubes.
>
> Again, neither the majority of the panel, the Tax Court majority nor the Commissioner has cited a single case in which the tax benefit rule has ever been applied solely on the basis of a fictional recovery of past deductions. To the contrary in every case cited by them, it was an actual economic recovery which triggered the application of the tax benefit rule.

582 F.2d at 387.

This court agrees with Judge Weick's dissent and his reliance upon *South Lake Farms.*

Defendant contended in its briefs and in oral argument that *South Lake Farms* had been seriously eroded in the Ninth Circuit by their subsequent decisions in *Home Savings and Loan Association v. United States,* 514 F.2d 1199 (9th Cir. 1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 386 (1975) [court held tax benefit rule applicable to the recovery of previously expensed bad debts]; and *Spitalny v. United States,* 430 F.2d 195 (9th Cir. 1970) [court held that tax benefit rule could be applied to section 337 liquidation]. However, the Ninth Circuit recently reaffirmed *South Lake Farms* in *Bliss Dairy, Inc. v. United States,* 645 F.2d 19 (9th Cir. 1981).

In the instant case, the defendant's primary arguments in support of their contention that the tax benefit rule should be applied here are as follows: (1) the asset will be allowed a double deduction if the tax benefit rule is not applied; and (2) there is a need to create parity between the applications of sections 336 and 337.[6]

The court believes that these arguments were adequately addressed in the dissents of Judge Tannenwald and Judge Weick. In regard to the first contention, Judge Tannenwald stated:

> [S]ince the petitioner realized nothing upon its own liquidation, it cannot be said to have enjoyed any "double deduction." Compare *Bishop v. United States, supra* [324 F.Supp. 1105], where, absent the tax benefit rule, a corporation would have twice enjoyed tax benefits where it had realized, but had not recognized, gain from section 337 liquidation sales of inventory and where the cost of the items sold had been deducted from income in previous years under the farm-price inventory method of accounting. See also *United States v. Skelly Oil Co.,* 394 U.S. 678, 684 [89 S.Ct. 1379, 1383, 22 L.Ed.2d 642] (1969); *Winer v. Commissioner,* 371 F.2d 684, 686 (1st Cir. 1967).

To the extent that there is a double deduction herein, it arises from the fact

---

**5.** The court also is in firm agreement with the dissent filed by Judge Tannenwald in the Tax Court case of *Tennessee-Carolina Transportation v. Commissioner,* 65 T.C. at 449 (1975).

**6.** Section 337 provides, in pertinent part:

(a) General rule.—If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

In *Commissioner v. Anders,* 414 F.2d 1283 (10th Cir. 1969), the Tenth Circuit Court of Appeals applied the tax benefit rule to a section 337 liquidation. Also see *Spitalny v. United States, supra.*

that the distributee corporation appears entitled to expense its stepped-up basis in the tires and tubes. But any advantage to the distributee corporation by reason of a section 334(b)(2) stepped-up basis cannot be charged to the distributor-liquidating corporation. The provisions of section 334(b)(2) merely prescribe the basis of property in the distributee's hands; that they treat the parent as though it has purchased the assets of the subsidiary does not mean that they alter the tax consequences of a liquidation pursuant to other statutory sections, e. g., by imputing a sale of the property to the liquidated corporation. See *Supreme Investment Corp. v. United States*, 468 F.2d 370 (5th Cir. 1972); *Bijou Park Properties, Inc.*, 47 T.C. 207, 214 (1966); see also Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 11.44 (3d ed. 1975) (automatic operation of sec. 334(b)(2)). The tax benefit rule does not require one taxpayer to assume a tax liability for benefits accruing to another taxpayer. *Commissioner v. South Lake Farms, Inc., supra.* Cf. *Peter Pan Seafoods, Inc. v. United States*, 417 F.2d 670 (9th Cir. 1969).

65 T.C. at 452–53.

As to the second argument, Judge Weick stated:

In enacting Section 337, Congress did not evince an intent that all liquidations which utilize Section 336 have the identical tax result at the corporate level as a Section 337 liquidation. To the contrary, Congress was concerned with eliminating only the differences between *[C. I. R. v.] Court Holding Company* liquidations (324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945)) and *[U. S. v.] Cumberland Public Service Company* liquidations (338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950)), so that the tax consequences at the corporate level would be the same whether the liquidating corporation sold its assets and then distributed the proceeds to its shareholders in complete liquidation, or distributed its assets in kind to its shareholders for sale by them. *Central Tablet Mfg. Co. v. United States*, 417 U.S. 673, 678–82, 94 S.Ct. 2516, 41 L.Ed.2d 398 (1974); *Midland-Ross Corp. v. United States, supra* [485 F.2d 110, 6 Cir. 1978], at 114–115, and authorities cited therein.

In attempting to create absolute parity in taxation results between all liquidating transactions which utilize Section 336 and those liquidations which utilize Section 337, the majority and the Tax Court majority have gone beyond the purpose underlying the enactment of Section 337. Moreover, in justifying the application of the tax benefit rule to the facts of this case by relying on Section 337 cases, they fail to perceive that Section 337 was enacted as a shield to protect the taxpayer, and not as a sword to be utilized by the Government.

If there is to be parity in tax treatment under the two sections, the tax results dictated by Section 336 should control Section 337, and not vice versa. See *Midland-Ross Corp. v. United States, supra*, at 118.

582 F.2d at 387–88.

This court simply cannot find in the instant case the element of "recovery" which is necessary for the application of the tax benefit rule.[7] If the transaction in question would have been governed by section 337, then Salina Sand would have adopted a plan of complete liquidation and would have

---

**7.** One commentator has recognized the problems in requiring a corporation to recognize income from previous deductions in a section 336 liquidation:

First, there is no economic recapture of the deductions by the corporation, and second, the provisions of section 336 require that no gain or loss shall be recognized by the corporation on a liquidation. It may be that the nonrecognition provisions of section 336 would be overridden by the rule were there an economic recapture of the deductions by the corporation. However, since there is no such economic recapture by the corporation, it should be difficult for the courts to apply the rule as they have done in the case of a liquidating sale under section 337 to require recognition of income.

O'Hare, *Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders*, 27 Tax L.Rev. 215, 234 (1972).

sold all of its assets to Ballou pursuant to such plan and would have then distributed the proceeds from the sale of its assets to its stockholders in complete liquidation of Salina Sand. Under those circumstances, it would be easy to determine that Salina Sand had in fact received money or property for its assets and "recovered" any prior tax benefit which it may have realized because there was a transfer of property in exchange for cash or its equivalent. However, in liquidation transactions under section 336, as in the instant case, if there is a recovery it must be reflected in the price paid by Ballou to the former stockholders of Salina Sand because Ballou paid nothing to Salina Sand. It is extremely difficult to visualize how Salina Sand could be considered to have recovered a prior tax benefit because of a payment made by Ballou to the former stockholders of Salina Sand. Therefore, we find that, in the absence of specific legislation, the tax benefit rule cannot be applied to require recapture on a liquidation of a corporation because there has been no economic realization of the prior deduction by the corporate entity. Accordingly, we choose to follow the rationale and analysis used in *South Lake Farms* and the dissent in *Tennessee-Carolina Transportation*. Thus, we must sustain plaintiff's motion for summary judgment and deny defendant's like motion.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be and is hereby granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be and is hereby denied.

IT IS FURTHER ORDERED that judgment be entered for the plaintiff and against the defendant as requested in the prayer of plaintiff's complaint.

IT IS SO ORDERED.