**BALLOU CONSTRUCTION COMPANY, INC. as Transferee of Salina Sand Company, Inc. Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 79–4138.**

United States District Court, D. Kansas.

Feb. 12, 1985.

Tom W. Hampton of Hampton, Royce, Engleman & Nelson, Salina, Kan., for plaintiff.

G. Scott Nebergall, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., James P. Buchele, U.S. Atty., Karen M. Humphreys, Asst. U.S. Atty., Topeka, Kan., for defendant.

---

MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action for recovery of federal income taxes by Ballou Construction Company, Inc. (Ballou), as the transferee of Salina Sand Company, Inc. (Salina Sand), for the taxable period ending March 31, 1977. On August 4, 1981, this court entered judgment for Ballou, 526 F.Supp. 403. Thereafter, the United States appealed our decision. On April 29, 1983, the Tenth Circuit Court of Appeals vacated this court's judgment and remanded the case for further consideration in light of the Supreme Court's ruling in *United States v. Bliss Dairy, Inc.*, 460 U.S. 370, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983)[1]. *Ballou Construction Co., Inc. v. United States*, 706 F.2d 301 (10th Cir.1983). This court then ordered briefs and heard oral argument. We are now prepared to rule.

The facts have been stipulated by the parties and were recounted in our previous order in this case. Nevertheless, we shall restate them for the sake of the clarity of this opinion.

Salina Sand was organized under the laws of the State of Kansas in September, 1955. During the course of its existence, Salina Sand was engaged in the business of extracting, processing, and selling sand and gravel from various sand and gravel pits located in Saline County, Kansas. Salina Sand kept its books and filed its income tax returns on the basis of an accrual method of accounting, with a fiscal and taxable year beginning on July 1, and ending on June 30, except for its final fiscal period which began July 1, 1976, and ended March 31, 1977.

On March 1, 1977, the shareholders of Salina Sand entered into an agreement with Ballou, also a Kansas corporation, to sell all of their stock in the company for $750,-000. Salina Sand remained in operation through March 31, 1977. On the following day, Salina Sand was liquidated and dissolved pursuant to section 332.[2] Pursuant to the plan of liquidation, Salina Sand transferred all of its assets to Ballou, effective March 31, 1977, and Salina Sand was thereupon dissolved in accordance with the laws of the State of Kansas. Salina Sand filed its final tax return for the period July 1, 1976 to March 31, 1977.

One of the assets owned by Salina Sand at the time of liquidation was identified as "Sand Deposit in Place." This asset represented a certain amount of sand which Salina Sand had processed through the first stage of mining, but which had not yet produced income in the normal course of business. The mining and processing of sand can be segregated into three major stages: (1) the removal of dirt and silt commonly referred to as "overburden" located above the sand layer; (2) the pumping of sand from the pit to the processing equipment; and (3) cleansing and separation into various types of sand products with repeated washing and filtering of a raw product taken from the pit. The first stage of removal of overburden is accomplished by the scraping and hauling away of the dirt and silt layers with heavy construction machinery. Under Salina Sand's method of accounting, the costs of removing overburden were deducted pursuant to section 162(a) as they were incurred rather than as a cost of sand and gravel to be recovered upon sale.

Upon liquidation, the asset "Sand Deposit in Place" was transferred to Ballou. The parties have agreed that the asset was enhanced in value by $20,000 as a result of the removal of the overburden. Pursuant to section 334(b)(2), Ballou claimed a stepped-up basis in the assets received

1. The Supreme Court consolidated *Hillsboro National Bank v. Commissioner,* 641 F.2d 529 (7th Cir.1981), and *Bliss Dairy, Inc. v. United States,* 645 F.2d 19 (9th Cir.1981), to address the scope of the tax benefit rule. These cases are cited as *Hillsboro National Bank v. Commissioner,* 460 U.S. 370, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983).

Since *Bliss Dairy* has a more direct application to this case than Hillsboro, we shall refer to the Supreme Court's decision as *Bliss Dairy.*

2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

from Salina Sand by allocating the purchase price of the Salina Sand stock proportionately to the assets received based on the respective fair market value. The asset "Sand Deposit in Place" was allocated a basis of $100,000. Subsequently, Ballou took business expense deductions totalling $100,000 as a part of the cost of goods sold, representing its utilization of the asset "Sand Deposit in Place."

In the examination of the final income tax return of Salina Sand, the Commissioner of Internal Revenue determined that Salina Sand had realized additional gross income in the amount of $20,000 for recovery of the costs of removing overburden which had been deducted by Salina Sand. In other words, the Commissioner decided that Salina Sand had deducted certain costs incurred in the acquisition of the sand and gravel in place but had not recognized any income on the disposition of such sand and gravel in place as a result of the liquidation and dissolution of Salina Sand. The Commissioner determined that such a "tax benefit" must be recognized by Salina Sand in its final tax period. Therefore, the Commissioner increased the taxable income of Salina Sand for its final taxable period by $20,000 and such adjustment in the taxable income resulted in a federal income tax deficiency of $9,600. The deficiency together with the interest thereon was subsequently paid by Ballou, as the transferee of Salina Sand, and this action was brought to recover such amount and interest.

The United States asserts that *Bliss Dairy* controls this case and requires that judgment be entered for it. The United States argues that *Bliss Dairy* requires that the tax benefit rule be applied and that it overrides the nonrecognition provision of section 336. Ballou disagrees and suggests that the tax benefit rule cannot be applied because the transactions involved here all occurred in the same taxable year. Ballou also contends that it realized no tax benefit. Finally, Ballou argues that section 336 shields it from having to recognize income under the circumstances of this case.

In *Bliss Dairy*, the Supreme Court addressed the two issues which formed the core of this court's previous order in this case. First, the Court determined whether an actual recovery by the taxpayer is necessary for the application of the tax benefit rule. Second, the Court considered the rule's applicability despite the presence of a specific nonrecognition provision.

The facts of *Bliss Dairy* are remarkably similar to the facts of the instant case in a number of ways. In 1972, Bliss Dairy, a closely held corporation, purchased cattle feed for use in its dairy operation. The dairy claimed a deduction pursuant to section 162(a) for the full amount of the feed in accordance with its cash method of accounting. A substantial portion of the feed was still on hand at the close of the taxable year. After one day of operation in the next tax year, Bliss Dairy adopted a plan of liquidation and distributed all of its assets to its shareholders. The assets distributed included the unused cattle feed. Relying on section 336, Bliss Dairy reported no income from this distribution. The Commissioner of Internal Revenue increased Bliss Dairy's corporate income or its final tax return by $60,000, asserting that the value of the grain distributed to the shareholders should have been included in income. Bliss Dairy paid the tax assessment and sued for a refund in the United States District Court for the District of Arizona. The district court granted Bliss Dairy's motion for summary judgment. The Ninth Circuit affirmed the district court's opinion. The appellate court relied on its prior decision in *Commissioner v. South Lake Farms, Inc.*, 324 F.2d 837 (9th Cir.1963), and rejected a conflicting decision in the Sixth Circuit, *Tennessee-Carolina Transportation, Inc. v. Commissioner*, 582 F.2d 378 (6th Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979). The Supreme Court reversed and remanded. The Court determined that the tax benefit rule overrides the nonrecognition provisions of section 336 and requires the inclusion of income of a previous deduction when events occur that are fundamentally inconsistent with that earlier deduction.

In *Bliss Dairy*, the Court began by examining the tax benefit rule. The Court emphasized that the purpose of the rule was not simply to tax recoveries, but "to approximate the results produced by a tax system based on transactional rather than annual accounting." 460 U.S. at 381, 103 S.Ct. at 1142. The taxpayer's argument that the rule required an actual recovery in later years was rejected. The Court concluded that an actual recovery requirement would not serve the purposes of the rule. The Court determined that, in order to achieve "rough transactional parity," the tax benefit rule must be applied when "the later event is indeed fundamentally inconsistent with the premise on which the deduction was initially based." 460 U.S. at 383, 103 S.Ct. at 1144. It was stressed by the Court that this decision must be made on a case-by-case basis, considering in each instance the purpose and function of the Internal Revenue Code provisions allowing the original deduction.

Turning to the effect of nonrecognition provisions on the tax benefit rule, the Court noted that when the later event is within a nonrecognition provision of the Code there is "inherent tension" between the tax benefit rule and the nonrecognition provision. 460 U.S. at 385, 103 S.Ct. at 1143. The Court refused to adopt a blanket rule but instead stated that the result would be based on the particular provisions of the Code involved in the given case.

■ Our review of *Bliss Dairy* reveals that it controls this case. The situation here is quite similar to that in *Bliss Dairy*. The arguments made by Ballou are without merit.

■ Ballou argues that the tax benefit rule cannot be applied because the alleged inconsistent events occurred in the same taxable year. Technically, as suggested by Ballou, the tax benefit rule applies in the case of an inconsistent event occurring in a taxable year after the year of the deduction. However, we find that "tax benefit principles" do apply here. As stated in *Spitalny v. United States*, 430 F.2d 195, 198 (1970):

We concede that where both deductions and offsetting recovery occur in the same taxable year use of the "tax benefit rule" label is inappropriate. The rule contemplates the situation where a tax benefit has been received through deductions taken in past years. Here the Commissioner's treatment precludes the receipt of any benefit. However, tax benefit principles would seem to apply with even greater force in such a case as this.

■ Likewise, Ballou's remaining arguments are nonmeritorious. *Bliss Dairy* does not require an actual recovery by the taxpayer before the tax benefit rule can be applied, only a later event which is fundamentally inconsistent with an earlier deduction. Salina Sand, like Bliss Dairy, deducted the cost of the removal of the overburden under section 162(a). The premise of a deduction under section 162(a) is that an expensed asset will be consumed by the taxpayer in his trade or business. Salina Sand's later distribution was an inconsistent event with the deduction for two reasons. First, the taxpayer who sells rather than consumes an expensed asset will lose the deduction because the full amount of the proceeds must be recognized. Second, Salina Sand's distribution of the "Sand Deposit in Place" to its shareholder "turns the expensed asset to the analog of personal consumption" and thus the assumption underlying the original deduction is proven invalid.

Finally, the *Bliss Dairy* majority held that the nonrecognition provisions of section 336 did not permit a liquidating corporation to avoid the tax benefit rule. The Court examined the background of section 336 and determined that it does not shield corporate taxpayers from the recognition of all income upon liquidation. The Court further found that section 337, the companion provision to section 336, did not override the tax benefit rule and Congress intended similar construction for the corresponding language of section 336. Based upon these rulings, the court is unable to find any support for Ballou's arguments.

In sum, we find that defendant's motion for summary judgment must be granted.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be hereby granted. Judgment shall be entered for the defendant and against the plaintiff.

IT IS SO ORDERED.