CARLTON L. BYRD, TRANSFEREE OF THE ASSETS OF EASTERN SHORE NURSERY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROBERT H. WILLEY, JR., TRANSFEREE OF THE ASSETS OF EASTERN SHORE NURSERY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 32626-84, 32699-84.    Filed October 27,1986.

*Douglas E. Kahle*, for the petitioners.
*Richard F. Stein*, for the respondent.

OPINION

DRENNEN, *Judge*: These cases have been consolidated for trial pursuant to Rule 141. [1] Respondent determined a deficiency in the Federal income tax of Eastern Shore Nursery of Virginia, Inc. (Eastern Shore or the corporation), for the taxable year 1980 of $113,480.62. Petitioners are liable for this deficiency as transferees of the assets of Eastern Shore. Respondent issued notices of transferee

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years at issue.

liability to each petitioner for the above deficiency on June 14, 1984. It is stipulated and found that petitioners are transferees at law and in equity of assets of Eastern Shore, within the meaning of section 6901, I.R.C. 1954, and are liable for any deficiency in income tax due from the transferor, Eastern Shore, for the taxable year ended March 29, 1980.

The issue in this case is whether, pursuant to the tax benefit rule and section 111, Eastern Shore is required to include as income on its final return $244,880 of previously expensed plant inventory which was distributed to its shareholder, a partnership, upon the liquidation of Eastern Shore.

The facts of this case have been fully stipulated pursuant to Rule 122. The stipulations of fact and joint exhibits attached are incorporated herein by this reference.

Petitioner Carlton L. Byrd (Byrd), resided in Onancock, Virginia, and petitioner Robert H. Willey, Jr. (Willey), resided in Fargo, North Dakota, when the petition in this case was filed.

B & W, Inc., was organized on June 21, 1976, under the laws of the Commonwealth of Virginia. The corporate name was subsequently changed to Eastern Shore Nursery of Virginia, Inc. Its principal place of business was Kerr, Virginia. The stock of Eastern Shore was owned 50 percent by Byrd and 50 percent by Willey. Byrd and Willey (petitioners) operated Eastern Shore, a nursery, as an electing small business corporation from June 24, 1976, through March 29, 1980.

Eastern Shore kept its books and filed its returns on the accrual method of accounting. For tax purposes, Eastern Shore did not maintain an inventory of plants but rather expensed its cost of inventory on a yearly basis as if it were a cash basis taxpayer. For financial and book purposes, Eastern Shore maintained an ongoing yearly inventory of its plants. During the taxable years 1976, 1977, 1978, and 1979, Eastern Shore filed Forms 1120 on a calendar year basis.

On March 29, 1980, petitioners entered into an agreement (the agreement), with a general partnership known as Eastern Shore Nursery of Virginia (the partnership), an

organization totally unrelated to Eastern Shore or to petitioners. Pursuant to the agreement, petitioners sold all of the outstanding stock of the corporation to the partnership. Concurrently with this sale, the partnership liquidated Eastern Shore pursuant to section 331 and section 336. Pursuant to the liquidation all of Eastern Shore's assets were distributed in kind to its shareholder, the partnership.

On March 29, 1980, Eastern Shore had on hand and distributed to the partnership in liquidation all of its unsold plant inventory. While the plant inventory had a book value of $244,880, its tax basis was zero because the plants had been previously expensed. On that same day, Eastern Shore had on hand and distributed to the partnership in liquidation an inventory of supplies which had been previously expensed in the amount of $33,225.

The agreement also assigned a fair market value to each of the corporation's assets as follows:

| | |
|---|---:|
| Cash | $25 |
| Accounts receivable | 47,369 |
| Plant inventory | 450,517 |
| Supplies | 33,225 |
| Equipment | 57,365 |

The partnership claimed a stepped-up basis in the assets it received upon liquidation by allocating the purchase price of the stock proportionately to the assets received based upon their respective fair market values. The plant inventory was allocated a basis of $450,517. At present, the partnership continues to operate the nursery.

In the notices of liability issued to petitioners, respondent determined that expenses previously deducted by the corporation in the amount of $278,105 are recoverable pursuant to section 111.[2] Of that amount, $33,225 is related to the

---

[2] The notices of liability state "It is determined that expenses previously deducted, in the amount of $278,105.00, are recoverable under section 111 of the Internal Revenue Code."

The stipulation of facts state in paragraph 24, "The sole issue before the Court is whether the $244,880.00 of previously expensed inventory relating to the unsold plants is recoverable under I.R.C. §111."

As we read section 111 it does not affirmatively provide for the recovery of anything; it excludes from gross income income attributable to the recovery of items previously deducted which did not produce a tax benefit. It is a limitation on the tax benefit rule, which originated in the courts. See note 8 at 377 of the majority opinion in *Hillsboro National Bank v. Commissioner* and *United States v. Bliss Dairy, Inc.*, 460 U.S. 370 (1983), and the concurring and dissenting opinion of Justice Stevens in that case.

We are concerned with the tax benefit rule here.

cost of supplies which had been deducted but which remained unused when Eastern Shore liquidated. The parties have stipulated that petitioners are liable for the tax which results from the application of section 111 to the $33,225 of unused supplies.[3]

No part of the deficiency in corporate income tax due from the transferor, together with interest thereon as provided by law, has been paid.

We must determine whether Eastern Shore's distribution of its plant inventory to its sole shareholder, the partnership, upon liquidation requires it to report, as income on its final return, $244,880 of previously deducted plant inventory. Our determination rests upon the application of the tax benefit rule to these particular circumstances.

Petitioners contend the tax benefit rule discussed in *Hillsboro National Bank v. Commissioner* and *United States v. Bliss Dairy, Inc.*, 460 U.S. 370 (1983) (hereinafter cited as *Bliss Dairy*), is to be applied to require that amounts deducted in an earlier year be included in income only when an event occurring in a subsequent tax year is fundamentally inconsistent with the premise on which the prior year's deduction was based. Petitioners contend that in applying this test of "fundamental inconsistency," the Supreme Court has stated that the focus must be on the purpose and function of the provisions allowing the prior year's deduction. Petitioners allege if the purpose for the deduction is thus accomplished in the year of the deduction, then a subsequent event leading to a recovery in a later year will not be fundamentally inconsistent with the deduction. Petitioners contend further that since the purpose for Eastern Shore's expensing the cost of growing plants was accomplished in the tax year ending March 29, 1980, the subsequent liquidation of Eastern Shore was not a fundamentally inconsistent event. Therefore, petitioners conclude that the cost of the previously expensed plant inventory is not recoverable under section 111 or the tax benefit rule.[4]

---

[3]Petitioners also concede that they are liable for the tax resulting from Eastern Shore's understatement of gain on the sale of sec. 1245 assets by $9,670.

[4]Petitioners do not contend there must be actual recovery to make the tax benefit rule applicable or that the rule is not applicable in a liquidation. These arguments were both answered in *Bliss Dairy*.

To the contrary respondent contends that the tax benefit rule overrides the nonrecognition provisions of section 336 and requires the corporation to include the $244,880 of previously expensed inventory in income. Respondent argues the deduction allowed to Eastern Shore for the plants was premised on the assumption that the plants would be sold by the corporation in the ordinary course of business. The plants were instead distributed in liquidation. Respondent contends the liquidation distribution was fundamentally inconsistent with the premise upon which the deduction was based. Therefore, respondent concludes that his determination should be sustained.

The tax benefit rule is a judicially created doctrine that has been embodied in part in section 111.[5] The tax benefit rule avoids distortion of income by requiring that if an item is deducted in one year but recovered in a later year it must be included in income in the later year to the extent of the recovery. See, e.g., *Estate of Block v. Commissioner*, 39 B.T.A. 338 (1939), affd. sub nom. *Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir. 1940); Plumb, The Tax Benefit Rule Today, 57 Harv. L. Rev. 129 (1943).

The Supreme Court discussed the tax benefit rule most recently in the consolidated cases of *Hillsboro National Bank* and *Bliss Dairy*.[6] In *Bliss Dairy*, a closely held corporation, a cash basis taxpayer, was engaged in the operation of a dairy. The corporation purchased cattle feed for use in its operations and deducted in its current taxable year the full cost of the feed pursuant to section 162. At the end of that taxable year, a substantial amount of the feed was still on hand. Two days into its next taxable year, the corporation adopted a plan of liquidation and distributed its assets, including the cattle feed, to its shareholders. The shareholders continued to operate the dairy. Relying on section 336, the corporation reported no income from the distribution. The Supreme Court held that the distribution

---

[5]Sec. 111 provides in part as follows:

SEC. 111. RECOVERY OF TAX BENEFIT ITEMS.

(a) DEDUCTIONS.—Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amounts did not reduce income subject to tax. * * *

[6]*Bliss Dairy* actually involved two cases; one involving Hillsboro National Bank and one involving Bliss Dairy, Inc. Our focus will be upon the case involving Bliss Dairy, Inc., since it is factually similar to the instant case.

to the shareholders was a nonbusiness use that was inconsistent with a deduction under section 162 for an ordinary and necessary business expense. The Court also held that the tax benefit rule overrode the nonrecognition provisions of sections 336 and 337. Therefore, the corporation had to include in income the amount of the unwarranted deduction; the amount being that portion of the cost of the grain attributable to the amount on hand at the time of liquidation. The test utilized by the Court in determining whether the tax benefit rule required Bliss Dairy to recoup income from its prior deduction was whether the distribution to its shareholders upon liquidation was "fundamentally inconsistent with the premise on which the deduction was initially based." *Bliss Dairy*, 460 U.S. at 383. The Court therefore conducted an examination of the purpose and function of section 162. *Bliss Dairy*, *supra*.

The parties agree that the decision in *Bliss Dairy* and the principles stated therein are determinative for our purposes. However, the parties disagree upon the result reached when the principles of *Bliss Dairy* are applied to the instant case. Petitioners contend that when the purpose and function of the code provision granting the deduction herein is examined, the later distribution of the plant inventory to the shareholders does not prove to be fundamentally inconsistent with the prior deduction. Petitioners contend that our focus should be on section 352 of the Revenue Act of 1978 (hereinafter referred to as act section 352). Act section 352 provided that farmers, nurserymen, and florists utilizing the accrual method of accounting who were not required by section 447 to capitalize preproductive period expenses, could not be required to inventory growing crops. Petitioners contend the purposes behind act section 352 were (1) to allow taxpayers to avoid the difficulty of maintaining inventory records of growing crops; and (2) a recognition that the effect of weather and disease make it difficult to ascertain the amount and value of crops on hand at the beginning of each taxable year. Petitioners contend that these purposes were accomplished by allowing Eastern Shore to expense its costs for plants. Since the legislative purposes behind act section 352 were accomplished during the taxable years in question, petitioners argue, the subse-

quent liquidation of Eastern Shore and distribution of its assets had independent significance and was not fundamentally inconsistent with the prior deduction.

Respondent however contends that petitioners have lost sight of the fact that the deduction in the earlier year authorized by section 162 is premised on the fact that an expense is necessary to produce income in the ordinary course of one's business. Respondent asserts that expenses incurred by nurserymen in growing plants are deductible because the plants will be sold to customers in the ordinary course of business. Therefore respondent concludes that since the plants were distributed to shareholders in liquidation this treatment was fundamentally inconsistent with the purpose behind the section 162 deduction. For the reasons set forth below, we agree with respondent.

Section 352 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2846-2847, provided as follows:

(a) APPLICATION OF SECTION.—This section shall apply to a taxpayer who—
(1) is a farmer, nurseryman, or florist,
(2) is on an accrual method of accounting, and
(3) is not required by section 447 of the Internal Revenue Code of 1954 to capitalize preproductive period expenses.
(b) TAXPAYER MAY NOT BE REQUIRED TO INVENTORY GROWING CROPS.— A taxpayer to whom this section applies may not be required to inventory growing crops for any taxable year beginning after December 31, 1977.
(c) TAXPAYER MAY ELECT TO CHANGE TO CASH METHOD.—A taxpayer to whom this section applies may, for any taxable year beginning after December 31, 1977 and before January 1, 1981, change to the cash receipts and disbursements method of accounting with respect to any trade or business in which the principal activity is growing crops.
(d) SECTION 481 OF CODE TO APPLY.—Any change in the way in which a taxpayer accounts for the costs of growing crops resulting from the application of subsection (b) or (c)—
(1) shall not require the consent of the Secretary of the Treasury or his delegate, and
(2) shall be treated, for purposes of section 481 of the Internal Revenue Code of 1954 as a change in the method of accounting initiated by the taxpayer.
(e) GROWING CROPS.—For purposes of this section, the term 'growing crops' does not include trees grown for lumber, pulp, or other nonlife purposes.
[92 Stat. 2846-2847 (1983).]

Act section 352 made section 447 applicable to nurserymen, and others as noted. This change thus allowed nurserymen the more favorable accounting treatment of utilizing the accrual method of accounting without inventorying growing crops. See Staff of Joint Comm. on Taxation, General Explanation of the Revenue Act of 1978 at 203 (J. Comm. Print 1979) (hereinafter cited as General Explanation). In addition, nurserymen eligible to use an accrual method of accounting could elect, without prior Internal Revenue Service approval, to utilize the cash method of accounting. See General Explanation, *supra.*

Act section 352 did not change the nature of deductions available to nurserymen, or the purpose and function of such deductions. The changes made by act section 352 were changes in timing; changes in accounting treatments. Deductions taken by nurserymen and farmers are governed by section 162 which is the test for all deductions incurred by a taxpayer in a trade or business. We find the facts of *Bliss Dairy* similar to those in the instant case and view *Bliss Dairy* as controlling for our purposes. We must therefore examine the purpose and function of section 162 in light of petitioners' deductions to determine whether the distribution to Eastern Shore's shareholder in liquidation was "fundamentally inconsistent with the premise on which the deduction was initially based."

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred by the taxpayer during the taxable year in carrying on a trade or business. Only net income derived from conduct of the business is subject to taxation. Farmers or nurserymen engaged in the production of crops which take more than 1 year to produce from the time of planting may deduct expenses pursuant to the crop method in the taxable year in which income from the crop is realized, or the cost of seeds and young plants which are purchased for further development and cultivation prior to sale in later years may be deducted as an expense for the year of purchase, provided a consistent practice of deducting such costs as an expense from year to year is followed. Sec. 1.162-12(a), Income Tax Regs. If the purchased plants are not sold in the ordinary course of the taxpayer's trade or business, but are instead converted to a nonbusiness use

which does not produce business income, this action would be viewed as inconsistent with the prior deduction, and the tax benefit rule would require that an amount equal to the unwarranted deduction be included in income. See *Bliss Dairy, Inc. v. United States, supra* at 1149.

Such is the situation in the instant case. Petitioners deducted the cost of young plants purchased for sale in their business after the plants had grown to mature size. Instead of selling the plants in the ordinary course of their trade or business and realizing income to offset the cost of production, petitioners distributed the plants to its shareholder in liquidation. It is clear that this treatment is "fundamentally inconsistent" with the purpose for which the deduction was taken. Pursuant to section 162(a), the deduction for young plants purchased in the ordinary course of business is allowed with a view to recouping this expense when the plants reach maturity and are thereafter sold. Therefore, the original cost of the plants is matched with the later income from the harvest of the crop. *Bliss Dairy, supra; Ballou Construction Co. v. United States*, 611 F. Supp. 375 (D. Kan. 1985); see also sec. 1.162(a)-12, Income Tax Regs. While the timing of their tax treatment is governed by section 447 which was amended by section 352, the authority for petitioners' deductions lies in section 162. Since petitioners distributed the plants to their shareholders in liquidation, the tax benefit rule requires that they include in income the amount of their unwarranted deduction.[7]

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[7]See also *Gorton v. Commissioner*, T.C. Memo. 1985-45.