JAMES A. CLAUSMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clausman v. Commissioner
Docket No. 6456-85
United States Tax Court
T.C. Memo 1989-147; 1989 Tax Ct. Memo LEXIS 146; 57 T.C.M. (CCH) 17; T.C.M. (RIA) 89147; April 4, 1989
Elizabeth Clayton Cox, for the petitioner. Thomas Coker, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated December 21, 1984, respondent determined a deficiency of $ 8,478 in petitioner's Federal income tax for 1981. The issues for decision are: (1) whether certain business expenses claimed by petitioner were ordinary and necessary expenses under section 162; [1] (2) whether petitioner was entitled to a deduction under section 165 for certain claimed theft losses; (3) whether certain rental expenses claimed by petitioner were ordinary and necessary expenses for the production of income under section 212; (4) whether petitioner was entitled to claim an investment tax credit for a van purchased in 1981; and (5) what was the proper amount of investment tax credit recapture under section 47 for a van for which petitioner claimed investment tax credit in 1979 and which ceased to be section 38 property in 1981. *150 FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner resided in Hollywood, California, at the time he filed his petition. Petitioner filed his Federal income tax return using the cash receipts and disbursements method of accounting for the year in issue. During 1981, petitioner worked full-time as a plumber for Air Conditioning Company, Inc. (ACCO). Petitioner was also engaged part-time in a "rooter service" activity during weekends and evenings. During 1981, petitioner worked a total of 73 hours in his rooter service and earned gross receipts of $ 1,457. Petitioner used his 1979 Chevrolet van (the Chevrolet van) for his rooter service until the van was stolen on August 6, 1981. Petitioner received insurance reimbursement for the stolen Chevrolet van in the amount of $ 5,839. On August 17, 1981, petitioner purchased a 1979 Dodge van (the Dodge van) to replace the stolen Chevrolet van. The purchase price was $ 4,330 for the Dodge van plus sales tax of $ 259.80 for a total price of $ 4,589.80. Petitioner made a cash *151 downpayment of $ 1,092.80 and financed the remaining $ 3,497 over 30 months at an annual interest rate of 21.40 percent. Petitioner also used his Dodge van for his rooter service. During 1981, petitioner used his Chevrolet and Dodge vans to travel 1,383 miles for his rooter service. Petitioner also used his vans in his employment with ACCO. He carried tools and materials to and from job sites for ACCO and traveled between sites in his capacity as foreman. ACCO reimbursed petitioner for the mileage he incurred in the course of his employment. In 1975, petitioner purchased rental property located at 11738, 11738-1/4, 11738-1/2, and 11740 Runnymede Street, North Hollywood, California (the Runnymede property). The Runnymede property consisted of 4 units -- 2 three-bedroom units and 2 one-bedroom units. During 1981, petitioner occupied one of the three-bedroom units, 11738 Runnymede. Petitioner rented 11738-1/4 Runnymede to Theodore Laferet during 1981. During the year in issue, petitioner rented 11740 Runnymede to Megeal Angel Romero until approximately June 9, 1981. Petitioner's unit at 11740 Runnymede was unoccupied for the remainder of 1981. Petitioner's property located *152 at 11738-1/2 Runnymede was unoccupied for the entire year 1981. On his 1979 income tax return, petitioner claimed an investment tax credit in the amount of $ 1,240 with respect to his purchase of the Chevrolet van. Petitioner's 1979 income tax return was examined by the Internal Revenue Service (the Service) in 1981. After the audit, petitioner was only allowed a credit of $ 739 for the Chevrolet van. On his 1981 income tax return, petitioner reported gross receipts of $ 1,457 less total deductions of $ 7,624 for a net loss of $ 6,167 on a Schedule C for his rooter service. Petitioner's deductions were as follows: Vehicle expenses
$ 2,549
Depreciation
1,078
Insurance
1,340
Interest
257
Taxes
400
Telephone
200
Tools
1,800
$ 7,624
In his notice of deficiency, respondent disallowed $ 6,922 of these claimed expenses. Petitioner also claimed a $ 3,675 theft loss for his stolen Chevrolet van and personal property that he claimed was in the van. In computing the loss, petitioner reported an insurance reimbursement of $ 5,100. Respondent determined that petitioner was only entitled to a theft loss of $ 3,071. Petitioner claimed an investment tax *153 credit of $ 425 for the 1981 purchase of the Dodge van. Respondent disallowed petitioner's claimed investment tax credit. In addition, respondent determined that petitioner must recapture the $ 1,240 investment tax credit claimed on his 1979 income tax return. On Schedule E of his 1981 income tax return, petitioner reported gross rental income of $ 3,386 less depreciation of $ 2,211 and total other expenses of $ 10,818 for a net rental loss of $ 9,643. The claimed expenses, some of which reflected an adjustment for 25 percent personal usage, were as follows: Taxes
$    504
Insurance
338
Interest
1,157
Cleaning and hauling
61
Repairs
5,130
Replacements
3,200
Utilities
428
$ 10,818
The replacements expense of $ 3,200 reflected cash payments purportedly made to James Patrick Clausman, petitioner's 16-year-old son. Respondent disallowed $ 9,399 of petitioner's claimed rental expenses. Through discussions with his certified public accountant, petitioner was aware of the requirement of keeping adequate books and records for tax purposes. Other than canceled checks supporting some of his claimed expenditures, petitioner did not maintain any books, *154 diaries or other records detailing or otherwise explaining the nature, character or purpose of the amounts paid or claimed to have been paid during 1981. OPINION Rooter Service Activity
Ordinary and Necessary Business Expenses
The first issue for our consideration is whether petitioner was entitled to deduct the amounts claimed for his rooter service activity. Section 162(a) generally allows a deduction for ordinary and necessary business expenses paid in carrying on a trade or business. Therefore, to be allowable under section 162(a) an expense must be: (1) directly connected with or pertaining to the taxpayer's trade or business, sec. 1.162-1(a), Income Tax Regs.; (2) ordinary and necessary; and (3) paid within the taxable year. Deductions are a matter of legislative grace, and the applicable statutory elements must be met for allowance of deductions. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioner argues that the canceled checks introduced into evidence, as corroborated and supplemented by his testimony, *155 satisfy the requirements of section 162(a). Petitioner largely bases his argument on the Service's prior acceptance of his canceled check stubs as adequate books and records for his business activity in prior examinations. Respondent maintains that petitioner has failed to show that certain claimed expenses were paid during 1981. Respondent further asserts that for other claimed expenses petitioner has failed to show the required direct connection between the claimed expenses and the rooter service activity. Apparently, respondent does not challenge the trade or business status of petitioner's rooter service activity. Accordingly, we do not address that issue. Respondent's determinations are presumed correct, and accordingly, petitioner bears the burden of proof on the issues before us. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioner initially argues that respondent has placed in issue the adequacy of petitioner's records under section 6001. Petitioner maintains that in several audits prior to 1981 the Service accepted petitioner's canceled *156 checks as an adequate method of keeping records. Petitioner maintains that this acceptance of his method as adequate precludes respondent from now challenging the adequacy of petitioner's method without timely notice. Petitioner's argument does not, however, address the issues before the Court. Respondent does not seek to invoke his administrative power under section 6001 to require upon notice that petitioner keep certain records. Rather, respondent's disallowance is based upon petitioner's lack of proof showing an entitlement to deduction under section 162(a). In so doing, respondent does argue that petitioner's lack of proof is based on his inadequate records. Such argument is, however, within the context of section 162 and not section 6001. Moreover, the case petitioner relies on to support this position, Conway Import Co. v. United States,311 F. Supp. 5 (E.D.N.Y. 1969), is distinguishable on its facts from the instant case. In Conway, the Commissioner disallowed a deduction for gratuities paid by the taxpayer food purveyor's salesman to employees of its customers. After holding that such payments were indeed paid and were ordinary and necessary, *157 the court addressed whether the taxpayer's books and records were adequate, an issue explicitly before the court. In holding the taxpayer's books and records adequate, the court focused on the Commissioner's use of his unpublished internal manual record keeping requirements which the Commissioner attempted to retroactively apply to the taxpayer. More importantly, the court noted that the taxpayer's method of record keeping was approved by various levels of the Commissioner's representatives for several years prior to the year at issue. In the instant case, respondent has not placed the adequacy of petitioner's books and records at issue. Even if the adequacy of petitioner's books and records were at issue, petitioner has not introduced evidence of the pattern of acceptance of records as reflected in Conway Import Co. v. United States, supra, which accordingly is inapposite. Furthermore, settlements made at the Service's administrative level do not bind this Court for years subsequent to the settlement. Petitioner testified at trial that it was his practice to write checks for the expenses of his rooter service activity and mark "JC Enterprises" on the memo *158 line of the check. Petitioner further testified that all of the checks introduced into evidence in support of his claimed business expenses were for the operation of his rooter business. Petitioner introduced canceled checks to support some of his claimed expenses. Other than the canceled checks and purchase contract for the Dodge van introduced into evidence, petitioner produced no invoices or sales receipts to support the business purpose of his claimed expenditures. Petitioner's case at trial consisted of his testimony regarding the nature of each individual canceled check. Accordingly, we shall discuss the disallowed expenses separately. Vehicle Expense
We first address petitioner's claimed vehicle expense. Expenses deductible under section 162 include the operating expenses used in a trade or business. Sec. 1.162-1(a), Income Tax Regs. Petitioner argues that he used his Chevrolet and Dodge vans exclusively for his rooter service and his employment with ACCO. Petitioner further maintains that the vans were necessary to carry the plumber's tools and *159 equipment required by petitioner's work. Accordingly, petitioner argues that all expenses of maintaining the vans in good order should be deductible as ordinary and necessary business expenses, either of his rooter service or of his being an employee of ACCO. Petitioner introduced canceled checks as payment of the claimed amount. Petitioner testified that he never used his vans for personal use, in part because the weight of the stored tools and equipment prevented him from easily unloading the van. Respondent argues that petitioner has merely proved expenditures for a number of auto parts, but has not proved that such expenditures were ordinary and necessary business expenses of the rooter business. Moreover, respondent maintains that petitioner's testimony that the vans were also used in his employment with ACCO proved that some portion of the expenses of maintaining the van could not be ordinary and necessary business expenses of petitioner's rooter service. Respondent also contends that there is an indication of some personal usage of the vans by petitioner. Because the evidence indicates at least two uses of petitioner's vans -- for his rooter business and his employment *160 with ACCO -- we will discuss the deductibility of the respective vehicle expenses separately. With respect to his rooter business, petitioner has only proved that he used his vans for 1,383 miles. The evidence before us indicates additional usage which precludes us from allowing petitioner 100 percent of his claimed expenditures as an ordinary and necessary business expense of his rooter business. This Court does have some discretion to estimate local automobile transportation expenses, weighing heavily against the taxpayer whose inexactitude is of his own making. [2] Petitioner has not, however, introduced evidence of the number of miles driven for ACCO or the total miles he drove in 1981. Nor has he introduced any evidence from which we can estimate the percentage of business use for the vans. Accordingly, we are unable to arrive at a deductible amount greater than the amount already allowed by respondent in his notice of deficiency. [3]
*161 We next address petitioner's argument that his use of his vans in his employment with ACCO entitles him to a deduction for the costs of maintaining the vans. The deduction under section 162 for ordinary and necessary expenses includes those of the trade or business of being an employee. Primuth v. Commissioner,54 T.C. 374, 377 (1970); see also McGowan v. Commissioner,67 T.C. 599, 611-612 (1976). The cost of commuting between an employee's home and place of employment, however, is a nondeductible personal expense. Sec. 262; secs. 1.262-1(b)(5), 1.162-2(e), Income Tax Regs. Although petitioner generally testified that ACCO reimbursed him for his mileage and that the reimbursement was included in his wages, petitioner introduced no evidence of the amount of reimbursement, the number of miles traveled on behalf of ACCO, or of the number of miles between his home and place of employment. Moreover, we reject petitioner's argument that because he never used his van for personal use, all of his vehicle expenses were necessarily deductible business expenses *162 of his being an employee. The sole evidence that petitioner never used his vans for personal use was his testimony to that effect. We are not required to accept petitioner's self-serving statements and decline to do so here without further supporting evidence. Geiger v. Commissioner,440 F. 2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Although there is some evidence that petitioner may have incurred some deductible nonreimbursable business expense for his use of his vans for his employment with ACCO, we are unable to estimate such amount under Cohan v. Commissioner, supra, because of the paucity of evidence in the record. Insurance
We next address the deductibility of the automobile insurance expense claimed by petitioner. Insurance premiums paid in connection with a trade or business are deductible under section 162. Sec. 1.162-1(a), Income Tax Regs. Petitioner asserts that the claimed expense represented *163 automobile insurance on vehicles used for business, and accordingly, was an ordinary and necessary expense of his rooter business. Respondent argues that the outcome of this issue should be determined by our holding on the vehicle expense issue that petitioner is only entitled to deduct the portion of insurance related to the business usage of the vehicles. We agree with respondent. The deductibility of petitioner's insurance expense depends upon the extent the insured vehicles were used in a trade or business. In our previous discussion on vehicle expense we held that petitioner did not establish what part of the usage of his vehicles was for his trade or business. Accordingly, petitioner failed to meet his burden of proving the incorrectness of respondent's determination. Interest
The next issue before us involves petitioner's claimed interest expense associated with the purchase of the Dodge van. Section 163(a) generally allows a deduction for interest paid on indebtedness. In his brief, petitioner argues that the interest claimed by petitioner should be deductible because *164 it was paid with respect to the Dodge van used for his rooter business. Respondent maintains that petitioner failed to prove payment of the claimed interest. The issue before us is whether interest was paid on indebtedness. At trial, petitioner introduced into evidence a copy of the sales contract for the Dodge van he purchased in 1981. Although the contract bears an interest rate of 21.40 percent and provides for monthly payments, petitioner introduced no evidence that the monthly payments were actually made. This evidence merely proves the existence of indebtedness, which is only one of the elements required under section 163(a). Accordingly, petitioner has failed to prove payment and thus failed to carry his burden of proof on this issue. Taxes
We now address petitioner's claimed deductions for taxes. Section 164(a)(4) generally allows a deduction for the payment of state and local sales taxes. Petitioner maintains that the $ 400 claimed deduction for taxes on his Schedule C consisted of sales tax paid of $ 259.80 on the Dodge van purchased in 1981 and a $ 145 license fee *165 paid on the stolen Chevrolet van. Respondent argues that petitioner failed to prove payment of the claimed taxes. The contract introduced into evidence does reflect that petitioner was charged $ 259.80 in sales tax for the purchase of the Chevrolet van. The total contract price of the van included the sales tax. The contract further shows that petitioner made a downpayment of $ 1,092.80. Petitioner testified that he understood that part of the downpayment was to cover the sales tax. Assuming, arguendo, that petitioner's downpayment did not cover the sales tax, petitioner would still be entitled to a deduction for the sales tax because it was paid with funds borrowed from a third party. Schick v. Commissioner,22 B.T.A. 1067, 1069 (1931); McAdams v. Commissioner,15 T.C. 231, 235 (1950), affd. 198 F.2d 54 (5th Cir. 1952). Other than his testimony, however, petitioner introduced no evidence of payment of the $ 145 license fee for his stolen Chevrolet van. Petitioner testified he could not find a supporting check. Without further proof, we hold that petitioner is only allowed a deduction for taxes of $ 259.80. Tools
We next *166 address petitioner's claimed deduction for the tools used in his rooter business. Section 263(a) generally disallows deduction for amounts paid for certain capital expenditures. The regulations provide that acquisitions of equipment having a useful life substantially beyond the taxable year it was acquired is a nondeductible capital expenditure. Sec. 1.263(a)-2(a), Income Tax Regs. An exception is provided for tools of "short life or small cost" used by farmers. Sec. 1.162-12(a), Income Tax Regs.A taxpayer is allowed to depreciate the capitalized cost of the tools. Sec. 167(a). Petitioner argues that the plumber's tools purchased had a useful life of less than one year and, accordingly, were deductible as ordinary and necessary business expenses. With respect to whether the tool expenditures are deductible or must be capitalized, petitioner argues that: It is common knowledge that plumbers break, wear out, lose or leave behind, many *167 tools on a frequent basis resulting in a useful life of less than one year. Therefore, the small plumber's tools would not be tangible property of a character subject to the allowance for depreciation used in a trade or business. In his notice of deficiency respondent allowed petitioner an expenditure for tools of $ 900. Respondent further maintains that petitioner is not entitled to currently deduct the amount expended for tools, but rather must recover his cost through depreciation. In his notice of deficiency, respondent allowed petitioner a deduction under section 168(b) of $ 225 ($ 900 X 25 percent). At trial, petitioner produced canceled checks totaling $ 382.21 that he testified were expenditures for tools. Petitioner also testified that he purchased tools from a plumber going out of business for $ 1,000 in cash. Petitioner further testified that he had no receipt for the tools and could only remember that he thought the seller's name was Dan. Petitioner also testified that he expended the remaining amount of claimed expenditures for tools at various cash sales. We do not find petitioner's testimony credible and hold that petitioner has not proved expenditures in excess *168 of the $ 900 allowed by respondent. Petitioner offers no legal authority why his expenses for plumber's tools should be deductible. Petitioner's conclusory statement in his brief regarding the "common knowledge" that plumber's tools have a useful life of less than one year is wholly unsupported and bears no evidentiary weight. Rule 143(b). We note that the regulations only provide an exception for small tools of farmers engaged in farms operated for profit. Sec. 1.162-12(a), Income Tax Regs. Moreover, petitioner introduced no evidence regarding the particular tools purchased and whether they had useful lives of one year or less. Accordingly, we hold petitioner has failed to overcome the presumption of correctness of respondent's notice of deficiency and hold for respondent on this issue. Depreciation
We now address the final deduction claimed by petitioner for his rooter service. Section 167(a)(1) allows a depreciation deduction for property used in a trade *169 or business. Petitioner argues that his vans were used solely for his rooter service and his employment with ACCO and that therefore he was entitled to a depreciation deduction for them. Respondent argues that because petitioner has not proved his portion of business use for the vans, petitioner is not entitled to depreciation. We agree with respondent. Since we have previously held that based upon the evidence before us we were unable to attribute the correct portion of petitioner's usage of his vans to a trade or business, we do not allow petitioner a depreciation deduction for his vans. The Runnymede Rental Property
Repairs
The next issue before us relates to petitioner's claimed deductions for repairs to the Runnymede property that was held for rental. Section 212(2) allows a deduction for the ordinary and necessary expenses paid for the management, conservation, or maintenance of property held for the production of income. No deduction is allowable, however, for any amount paid for permanent improvements or betterments made to increase the value of property. Sec. 263(a)(1). *170 Nor is any deduction allowable for amounts expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made. Sec. 263(a)(2). Repairs are distinguishable from capital expenditures as follows: A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. * * * [Illinois Merchants Trust Co., Executor v. Commissioner,4 B.T.A. 103, 106 (1926).] Petitioner argues that his claimed deduction was for repairs that were ordinary and necessary rental expenses. Petitioner further maintains that the claimed expenses did not extend the life of the Runnymede property, increase its value, or change the character of the property and thus were properly deductible as repairs rather than nondeductible capital expenditures. [4] Respondent argues that petitioner has failed to prove that the claimed expenditures were for repairs rather than nondeductible capital expenditures. *171 Respondent also argues that when petitioner's claimed repairs for 1981 are considered with those claimed in 1980 a plan of capital improvement is shown. Petitioner has produced canceled checks in support of his claimed deduction of $ 5,130. Petitioner testified that these expenditures were for repair and replacement of broken and worn parts of the property. Included in these checks was a check payable to Timberline Lodge in the amount of $ 47.70. Petitioner testified that this expenditure was incurred in a trip to Timberline to investigate the possibility of investing in rental property and perhaps moving his rooter business. Petitioner also testified that the two checks payable to Sight & Sound totaling $ 433.52 were for the purchase of a television set that he offered to rent to his tenants, as an incentive for them to choose his apartments over others in the area. Petitioner further testified that a check payable to Linda Foltz in the amount of $ 350 was for furniture *172 for the rental property. With regard to some of the other expenditures, petitioner testified that they were for various building supplies, either wood, electrical, or plumbing. Petitioner admitted that these expenditures could be for "any number of things." We hold that petitioner has failed to prove that the claimed expenditures were ordinary and necessary for the maintenance or repair of his rental property. [5] Petitioner's testimony reveals numerous claimed expenditures that are wholly inappropriate as deductible repairs: the trip to Timberline, the television set, and the furniture. Moreover, petitioner's vague uncorroborated testimony as to the general repair nature of his claimed deductions is not persuasive. Accordingly, we hold for respondent on this issue. Replacements
Petitioner maintains that he paid his 16-year-old son $ 3,200 *173 in cash for work performed on the rental property. Respondent argues that petitioner has failed to prove payment of the amount. Petitioner testified that he paid his son in cash rather than writing him checks because of the difficulty his son would have in cashing the check. Petitioner also testified that he determined the amount to pay weekly based on a large wall calendar that reflected the hours worked. Petitioner failed, however, to introduce any evidence whatsoever supporting this claim and instead introduced a summary of his monthly payments to his son. We hold that petitioner has failed to prove the deductibility of any of the amount at issue. Petitioner's testimony is not credible, and we give no weight to the summary purporting to represent the amounts paid. Allocation of Expenses between Rental Property and Personal Residence
The final rental activity issue relates to the allocation of rental expenses to reflect petitioner's use of part of the Runnymede property as a personal residence. The rental expenses at issue are: taxes, insurance, interest, utilities, and depreciation. [6] *174 Section 212(2) allows deduction for the ordinary and necessary expenses related to rental property. Section 262, however, precludes deduction for personal living expenses. Petitioner asserts that he occupied only 25 percent of the Runnymede Property. Respondent maintains that petitioner's usage was 40 percent. In support of his argument, petitioner testified that he occupied 25 percent *175 of the rental property.[7] However, petitioner contradicted this testimony by also testifying that he resided in a three-bedroom, two-bath unit with separate garage, which was larger than the 2 one-bedroom units, and presumably of equal size to the other three-bedroom unit. This testimony suggests petitioner's usage to be something greater than 25 percent. Moreover, petitioner did not introduce plans, blueprints, or any other evidence from which we could determine the proper allocation. Petitioner's failure to produce evidence within his possession "which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see also Davis v. Commissioner,88 T.C. 122, 143 (1987). Accordingly, we hold for respondent on this issue. *176 Theft Loss
The next issue before us is petitioner's claimed loss from the theft of his Chevrolet van and personal property he claimed was in the van. Section 165(c)(3) generally allows a deduction for, inter alia, theft losses, to the extent not compensated for by insurance. Of the $ 3,675 theft loss claimed by petitioner, respondent allowed $ 3,071. Petitioner maintains that respondent incorrectly disallowed petitioner's claimed loss of $ 604 for tools and clothing. Respondent asserts that petitioner failed to establish the amount of loss for the tools and clothing he claimed to have been stolen. At trial petitioner testified that he made a list of the tools stolen. The list, however, was not introduced into evidence. [8] Furthermore, no police report or insurance claim was introduced into evidence. The only evidence of the claimed loss is petitioner's testimony of the items purportedly stolen and that the replacement value of the stolen tools was approximately $ 4,000. Without corroborating evidence, we decline to accept this self-serving statement. Geiger v. Commissioner,supra. *177 The amount of loss, if any, is measured by petitioner's adjusted basis in the property and not by the replacement value. Accordingly, petitioner has failed to prove either that the loss occurred or the correct amount of the loss. Zmuda v. Commissioner,79 T.C. 714, 727 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Millsap v. Commissioner,46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968); Rule 142(a). Investment Credit on Dodge Van
We now address whether petitioner was entitled to the investment credit of $ 425 he claimed for the purchase of the Dodge van. Section 38(a) generally allows a credit against tax for certain investments in property which is subject to depreciation. Section 46(a)(2) *178 generally determines the amount of the credit. The amount of the credit is a percentage of the "qualified investment," as determined under section 46(c). The parties have stipulated that the basis of the Dodge van is $ 4,250. They differ, however, on whether petitioner's investment in the van is a qualified investment. Petitioner argues that he used the van solely for his rooter service and employment and that accordingly his was a qualified investment. Respondent maintains that petitioner has failed to prove the portion of his business usage as compared to any personal usage. In our previous discussion regarding petitioner's use of the Dodge van in his rooter service and employment, we disallowed petitioner's claimed depreciation deduction because he failed to prove his portion of business usage. Accordingly, we hold that petitioner has failed to prove his qualified investment in the Dodge van and was not entitled to claim an investment credit for it. Investment Tax Credit Recapture
The final issue before us involves the proper amount of investment tax credit recapture on petitioner's stolen Chevrolet van. *179 Section 47(a)(1) generally provides for the recapture of investment credit claimed in a prior year when property ceases to be section 38 property before the end of its useful life. Theft of property is treated as a disposition subject to the recapture rules. Section 107(a)(1), Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497. The parties do not dispute that recapture applies, but dispute the amount that should be recaptured. Petitioner argues that he must only recapture the amount of the investment credit he was allowed after the Service's examination of his 1979 return, which was $ 739. Respondent maintains that petitioner must recapture the full amount of credit he claimed, $ 1,240, notwithstanding that a lesser amount was eventually allowed upon audit. Respondent argues that our consideration of the amount of investment credit allowed petitioner in 1979 would violate Fed. R. Evid. 408[9] because the audit of petitioner's 1979 return resulted in a settled deficiency. We reject respondent's argument. In considering the investment tax credit allowed, we seek only to establish the eventual amount petitioner was able to benefit from. We do not address the substantive positions *180 taken by the parties in the settlement negotiations, which would not be admissible. Respondent offers no other argument why petitioner must recapture the amount initially claimed rather than the credit eventually allowed after the audit of the 1979 return. Indeed, the increase in tax for recapture is "* * * an amount equal to the aggregate decrease in the credits allowed under section 38 for all previous years * * *," section 47(a)(1) (emphasis added). *181 [10] Moreover, nothing in the legislative history of section 47 suggests that it was intended as a punitive provision. Indeed, respondent's own interpretation indicates that the recapture tax serves as a remedial measure. [11] Accordingly, we hold for petitioner that the proper amount of recapture was $ 739. *182 In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We note that in his brief, petitioner argues that once he furnishes "general" proof of expenditure, we should make an allowance for an amount we "conscientiously" feel is ordinary and necessary in the circumstances of petitioner's business. In support of this argument, petitioner cites Regal, Inc. v. Commissioner,435 F.2d 922 (2d Cir. 1970), a case which we further note does not remotely support such a proposition. Accordingly, we shall follow the well-settled principle of Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930), for determining whether petitioner is entitled to a reasonable estimate. 3. Respondent allowed petitioner a deduction in the amount of $ 277 representing 1,383 miles at $ .20 per mile.↩
4. In his argument petitioner again resorts to a discussion of the adequacy of his books and records. As we have previously explained, this issue is not before the Court and we will not address it further.↩
5. In the event that we disallow his claimed deduction, petitioner urges us to allow him a partial deduction under the auspices of Cohan v. Commissioner, supra.↩ As with petitioner's claimed vehicle expenses, we are unable to reasonably estimate a deduction after taking petitioner's inexactitude into consideration.
6. In his brief, petitioner challenges respondent's determination of depreciation. In his notice of deficiency, respondent determined petitioner's allowance for depreciation by applying the rental percentage (60 percent) to the depreciation claimed by petitioner ($ 2,211). Petitioner asserts that his claimed depreciation already reflected an adjustment for 25 percent personal usage. Such adjustment, however, is not apparent on the supplemental schedule for petitioner's 1981 return, which only states his depreciable basis. Petitioner's unsupported assertions in his brief are not evidence. Rule 143(b)↩. Without proof of petitioner's initial cost basis, we are unable to further address this issue.
7. At trial, petitioner argued that the 25 percent allocation was from a prior examination by the Service. He apparently has abandoned this argument in his brief.↩
8. In his brief, petitioner appears to argue that his showing the list to respondent throughout the administrative levels of examination of review is proof of the loss. This argument is meritless. Rule 143(b)↩.
9. Fed. R. Evid. 408 provides in part that: Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. * * * This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. * * *.↩
10. We note that sec. 47(a)(5)(D), added by section 211(g) of Pub. L. 97-34, 95 Stat. 172, apparently resolves this issue for property placed in service after December 31, 1980, by providing that the recapture tax shall be applied only to the extent that the credit allowed under section 38 reduced tax liability. Because petitioner's Chevrolet van was placed in service in 1979, section 47(a)(5)(D)↩ is inapplicable. Section 211(i)(1), Pub. L. 97-34. 11. In a revenue ruling involving recapture the Service reasoned that: Section 47(a) of the Code is designed to place the taxpayer in the same position at the close of the recapture year as he would have been in had he claimed the actual life of the "section 38 property" disposed initially in computing the amount of investment credit earned in the credit year. Rev. Rul. 72-221, 1972-1 C.B. 15↩, 16 (emphasis added).