**BALL CORPORATION, an Indiana corporation, Plaintiff–Appellee,**

v.

**Frederick C. FISHER, in his official capacity as Executive Director of the Colorado Department of Revenue, and the Colorado Department of Revenue, Defendants–Appellants.**

No. 01CA0246.

Colorado Court of Appeals, Div. IV.

Dec. 20, 2001.

Certiorari Denied July 22, 2002.

Lentz, Evans and King, P.C., Robert A. Wherry, Jr., Denver, CO, for Plaintiff–Appellee.

Ken Salazar, Attorney General, Carolyn Lievers, Assistant Attorney General, Denver, CO, for Defendants–Appellants.

Opinion by Judge DAVIDSON.

Defendants, the Colorado Department of Revenue and Frederick C. Fisher, in his official capacity as executive director of the Department (collectively Department), appeal from the judgment of the trial court reversing the Department's final determination that plaintiff, Ball Corporation (taxpayer), was not exempt from certain use taxes. We affirm.

According to the stipulated facts, after an audit, the Department issued a notice of deficiency to taxpayer for failure to pay use taxes levied by the state and by three special districts, namely, the Regional Transportation District, Scientific and Cultural Facilities District, and Baseball District. The use taxes were assessed on machinery at taxpayer's plant in Golden for the period of September 1, 1990 to September 30, 1993.

The alleged deficiencies fell into two categories. The first category involved machinery with less than a three-year useful life that taxpayer expensed for tax purposes after January 1, 1993, the effective date that taxpayer's plant was included within the Wheat Ridge Enterprise Zone Expansion Area. For that equipment, the Department alleged that both state and special district use taxes were due. The second category involved equipment with greater than a three-year useful life that taxpayer capital-

ized for tax purposes. For that equipment, the Department conceded that taxpayer was exempt from state use taxes but alleged that there was no exemption from the special district use taxes.

Taxpayer asserted that it was exempt from all of the assessed taxes, but, after an evidentiary hearing, the Department found that taxpayer did not qualify for an exemption. Specifically, the Department determined, pursuant to the statutes in effect during the audit period, that general state sales tax exemption criteria for certain machinery, contained in § 39–26–114(11)(d), C.R.S.2001, were incorporated into the general use tax exemption for such machinery, § 39–26–203(1)(y), C.R.S.2001, and into the Urban and Rural Enterprise Zone Act, § 39–30–101, et seq., C.R.S.2001. To qualify for the § 39–26–114(11)(d) exemption, property must also qualify for the federal investment tax credit (ITC) as described in "section 38 of the 'Internal Revenue Code of 1954', as amended." The Department determined that expensed equipment does not qualify for the ITC and, thus, a state or special district use tax exemption, even if located within an enterprise zone. The Department further determined, based on § 29–2–105, C.R.S.2001, that while machinery qualifying for the ITC is exempt from state use taxes, it is not exempt from the special district use taxes, even within an enterprise zone.

Taxpayer appealed the Department's final determination pursuant to § 39–21–105, C.R.S.2001. The trial court granted summary judgment in favor of taxpayer, reversing the Department's finding that taxpayer was not exempt from the use taxes. The trial court found that § 39–26–114(11)(d) included amendments to the federal tax code that eliminated a three-year useful life requirement, and, in any event, a useful life requirement conflicts with the exemption for expensed property contained in § 39–30–106, C.R.S.2001, and, therefore, is not required for the latter exemption. The trial court also determined that § 29–2–105 does not grant the special districts authority to assess a use tax on machinery that is exempt from state use tax.

In this appeal by the Department, the parties agree that there are no facts in dispute and that the issues to be resolved are ones of statutory construction and interpretation. The statutes in effect during the audit period have subsequently been amended but do not differ in relevant part from the current statutes, except where indicated.

■ The interpretation of a statute is a question of law and review is de novo. *United Airlines, Inc. v. Indus. Claim Appeals Office,* 993 P.2d 1152 (Colo.2000).

■ A court's primary goal in interpreting a statute is to determine and give effect to the intent of the legislature, and a court should first look to the plain and ordinary meaning of the statutory language. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo. 1991). If the language is unambiguous, resort to other interpretive rules of statutory construction, such as legislative history, is unnecessary. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30 (Colo. 2000). Statutory provisions should be construed as a whole, giving effect to each word and, where possible, harmonizing potentially conflicting provisions. *Farmers Reservoir & Irrigation Co. v. Consol. Mut. Water Co.,* 33 P.3d 799 (Colo.2001).

■ When interpreting tax statutes, a court should not view the power to impose taxes expansively, and should resolve doubts in favor of the taxpayer. *Transponder Corp. of Denver, Inc. v. Prop. Tax Adm'r,* 681 P.2d 499 (Colo.1984). However, when construing a tax exemption statute, a court should view exemption as the exception and taxation as the rule. *Colorado Dep't of Revenue v. Woodmen of the World,* 919 P.2d 806 (Colo. 1996). In any case, the court may not amend the statute by construction. *State Dep't of Revenue v. Adolph Coors Co.,* 724 P.2d 1341 (Colo.1986).

■ The interpretation of a statute by the agency charged with its enforcement is entitled to deference, but the court is not bound by such interpretation, especially in cases where the law has been misapplied or misconstrued. *Huddleston v. Bd. of Equalization,* 31 P.3d 155 (Colo.2001). Such deference is not required when the construction of

the statute by the agency has not been uniform or the statutory language clearly compels a contrary result. *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164 (Colo.1988).

## I.

The Department contends that § 39–26–114(11)(d) incorporates amendments to the federal ITC only to the date of the Colorado statute's enactment in 1979 and, thus, includes an absolute three-year useful life requirement. It argues that this prevents taxpayer's expensed machinery from qualifying for an exemption. Alternatively, the Department contends that even under the later versions of the ITC, taxpayer is not entitled to an exemption. Specifically, it argues that post–1979 versions of the ITC contain a depreciability requirement, which implies a one-year useful life requirement, that prevents expensed machinery from qualifying for exemption. The Department contends that the requirements of neither version conflict with the exemption for expensed property in § 39–30–106. We disagree with each contention.

Section 39–30–106 exempts certain machinery purchases made for use in enterprise zones from the state sales and use taxes imposed by article 26 of title 39, C.R.S.2001. In 1989, the section was amended to provide exemption "whether or not such purchases are capitalized or expensed." *See* 1989 Colo. Sess. Laws, ch. 341, § 39–30–106 at 1523. The section provides that administration of the enterprise zone sales and use tax exemption shall be pursuant to § 39–26–114(11), "except to the extent that such section and this section are inconsistent."

Section 39–26–114(11), in turn, is the general state sales tax exemption for certain machinery and includes the requirement that exempt equipment qualify for the former federal ITC. The requirements of § 39–26–114(11) are also incorporated by reference into the general state use tax exemption for such machinery, § 39–26–203(1)(y). Section 39–26–114(11)(a)(II), as it existed during the audit period, was prefaced by the phrase "[E]xcept as allowed in section 39–30–106." 1988 Colo. Sess. Laws, ch. 273 at 1317.

Thus, the two statutes each contain a provision for resolving conflicts between them, and the parties do not dispute that, when there is an inconsistency, § 39–30–106 will control.

The question to be answered, then, is whether an inconsistency exists between the applicable versions of § 39–26–114(11)(d), including incorporated federal requirements, and § 39–30–106. While both parties contend that there is no such conflict, they do so based on different reasoning, and they reach different results. On the one hand, the Department argues that there is either a one-year or three-year useful life requirement contained in the ITC and incorporated into § 39–26–114(11), but that neither conflicts with the "capitalized or expensed" language in § 39–30–106. On the other hand, taxpayer argues that there is no inconsistency because, under later versions of the ITC, exemption for "recovery property" is allowed regardless of useful life. Taxpayer further argues that, even if there were any useful life requirement, it would conflict with the provision in § 39–30–106 that allows an exemption for expensed purchases. We agree with taxpayer's second argument for several reasons.

### A.

The Department argues first that a three-year useful life requirement must be read into § 39–26–114(11)(d) because the reference to "section 38 of the 'Internal Revenue Code of 1954', as amended" means the version of that section as it appeared in 1979, when § 39–26–114(11)(d) was enacted, and not to subsequent amendments. We disagree.

Section 39–26–114(11)(d), providing an exemption from sales tax for certain machinery purchases, provides that "in order to qualify for the exemption provided in this subsection (11), a purchase must be of such nature that it would have qualified for the investment tax credit against federal income tax as was provided by section 38 of the 'Internal Revenue Code of 1954', as amended." Section 38 property was defined in § 48 of that code.

The relevant statutes have undergone a series of amendments. When § 39–26–114(11)(d) was enacted in 1979, the definition of § 38 property contained a three-year useful life requirement and the language of § 39–26–114(11)(d) was phrased in the present tense: "a purchase must also qualify for the investment tax credit against federal income tax provided by section 38 of the 'Internal Revenue Code of 1954', as amended." *See* 1979 Colo. Sess. Laws, ch. 373 at 1448. In 1981, the definition of § 38 property was amended to eliminate an absolute three-year useful life requirement and to permit an exemption for certain "recovery" property, defined by I.R.C. § 168 (1981). *See* Economic Recovery Act of 1981, Pub.L. No. 97–34, 95 Stat. 172. In 1986, the Internal Revenue Code of 1954 was revised and reenacted as the Internal Revenue Code of 1986, and the investment tax credit was effectively repealed. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat.2085. In 1988, Colorado's General Assembly amended § 39–26–114(11)(d) from its original language requiring that purchases qualify for the ITC, to its current language requiring that purchases "be of such nature that it would have qualified for the [ITC] as was provided by section 38." *See* 1988 Colo. Sess. Laws, ch. 277 at 1326.

Taxpayer disagrees with the Department's contention that § 39–26–114(d)(11) incorporates only the 1979 version of § 38 and argues that the "as amended" language includes all amendments up to 1986, when the 1954 code was superseded. The trial court agreed with taxpayer, determining that the General Assembly's use of the phrase "as amended" indicated a legislative intent to incorporate subsequent amendments. We agree with the trial court.

 When a statute specifically incorporates enumerated provisions of another statute, in contrast to referring to another law in general terms, the General Assembly is considered to be adopting the contents of the other provision as of the time of the adoption, and, "absent express legislative declaration to the contrary, subsequent amendments to the adopted statute will not affect the terms originally adopted." *Arrington v. Arrington,*

618 P.2d 744, 745 (Colo.App.1980). An example of such static incorporation would be if § 39–26–114(11)(d) had incorporated " § 38 of the Internal Revenue Code of 1954," without more.

However, the plain language of the statute is to the contrary. We conclude that, by adding the phrase "as amended," the General Assembly indicated that § 39–26–114(11)(d) was intended to track the federal provision as it evolved.

This interpretation is also consistent with the context of the statutes. When Colorado's tax provisions have counterparts at the federal level, incorporating amendments to the federal tax code simplifies compliance and enforcement under the Colorado tax code. *See* § 39–22–102, C.R.S.2001. While there is currently no federal counterpart, the federal ITC provisions in the Internal Revenue Code of 1954, as amended, served similar purposes to Colorado's exemption. *See Colorado Dep't of Revenue v. Cray Computer Corp.,* 18 P.3d 1277 (Colo.2001). Although there is no express legislative declaration similar to § 39–22–102 contained in the sales and use tax provisions, administration of § 39–26–114(11)(d) would be similarly simplified by incorporating the same criteria used under the federal tax code.

Moreover, to incorporate § 38 as it existed at the time § 39–26–114(11)(d) was adopted, it would have been sufficient for the General Assembly to reference the section number alone. A reference to any part of a statute includes all reenactments, revisions or amendments of that statute. Section 2–4–209, C.R.S. (2001). The addition of the phrase "as amended" was therefore unnecessary if the General Assembly meant only to adopt the statute as it existed in 1979 and to preclude incorporation of subsequent amendments.

 Similarly, if § 39–26–114(11)(d) incorporated § 38 as it existed in 1979, without subsequent amendments, the 1988 amendment changing the section to read in the past tense was also unnecessary. If a statute specifically incorporates another statute by reference, repeal of the incorporated statute does not result in a repeal of the incorporat-

ing statute. *See Sch. District No. 1 v. Hastings,* 122 Colo. 1, 220 P.2d 361 (1950). Thus, the amendment to § 39–26–114(11)(d) to include property that would have qualified for the ITC "as was provided" by the 1954 Code reflects only legislative recognition that the 1954 Code no longer existed. Since it had been replaced by the 1986 Code, there could be no subsequent amendments to the 1954 Code, and the version immediately prior to its repeal should govern the Colorado provision.

In other statutes, the General Assembly has made clear when it intends to preclude incorporation of subsequent amendments to the federal tax code. *See, e.g.,* § 31–30–1133(1), C.R.S.2001 ("as in effect on September 1, 1974, as applicable to governmental plans, or, to the extent not inconsistent, the federal 'Internal Revenue Code of 1986', as amended and in effect on January 1, 1989"); § 39–29–114(4), C.R.S.2001 ("as of January 1, 1987"); § 12–9–102(5.5)(a), C.R.S.2001 ("as amended through December 31, 1984"); § 15–1–1006, C.R.S.2001 ("as it exists on June 2, 1971; except that all references to the 'Internal Revenue Code of 1954' in section 15–1–1002(3) and (5) refer to the 'Internal Revenue Code of 1954' as it exists on April 19, 1973").

Conversely, the General Assembly has used the phrase "as amended" in related statutes as a shorthand method of incorporating future amendments to the federal tax code. Section 39–23.5–102(9.5), C.R.S.2001, defining "Internal revenue code" for estate tax purposes, was amended in the same 1988 bill that amended § 39–26–114(11)(d). The amendment to § 39–23.5–102(9.5) substituted the phrase "the 'Internal Revenue Code of 1986', as amended, and any regulations thereunder" for a much longer phrase clearly including subsequent amendments to the federal code and, importantly, indicated that no substantive change was intended by any of the amendments to the bill. Colo. Sess. Laws 1988, ch. 277 at 1325–26. This change in § 39–23.5–102(9.5) indicates that the phrase "as amended" was intended to be equivalent to the much longer phrase regarding subsequent amendments.

Thus, according to the relevant rules of statutory construction, § 39–26–114(11)(d) indicates that subsequent amendments to § 38 of the Internal Revenue Code of 1954 are incorporated into the Colorado statute. Therefore, the applicable definition of § 38 property, and the one incorporated into § 39–26–114(11)(d), is the one in effect immediately prior to the 1986 repeal of the 1954 code, specifically, "recovery property (within the meaning of section 168 without regard to any useful life) and any other property with respect to which depreciation ... is allowable and having a useful life ... of 3 years or more." I.R.C. § 48(a) (1985).

### B.

Contrary to taxpayer's contention, however, the fact that § 39–26–114(11)(d) allows exemption for recovery property "without regard to any useful life" does not end the inquiry. Section 168, defining recovery property, also requires that property be depreciable, which implies a one-year useful life. We must therefore determine whether a requirement of depreciability and a one-year useful life conflicts with § 39–30–106.

### 1.

In its final determination, the Department did not focus on a three-year useful life requirement. Instead, it determined that, even under the post–1979 ITC, taxpayer's property did not qualify for exemption because expensed property does not fit the definition of recovery property under § 168, which requires that property be depreciable. Thus, according to the Department, taxpayer's property was expensed, and because the requirements of § 39–26–114(11)(d) were not met, taxpayer was properly denied the § 39–30–106 exemption.

Although the Department argued in the trial court, and on appeal, that the three-year useful life requirement contained in the 1979 ITC was not inconsistent with the exemption for "expensed" machinery contained in § 39–30–106, because we have determined that the 1979 ITC is not the applicable version, we must necessarily address whether the post–1979 version of the ITC contains such a conflict. We conclude that it does.

Section 162(a) of the Internal Revenue Code permits a deduction for "ordinary and necessary business expenses paid or incurred during the taxable year." If an expenditure will provide benefits to the taxpayer substantially beyond the taxable year, the taxpayer generally may not deduct the full amount of the purchase in the year made but must capitalize the asset and recover the cost by methods including taking deductions for depreciation over the useful life of the asset. Treas. Reg. § 1.263(a)–1, 2 (2001); *Clausman v. Commissioner,* 57 T.C.M. (CCH) 17 (1989). While the line distinguishing a current expense from a capital expenditure may not always be clear, the two categories are generally distinct. *See INDOPCO, Inc. v. Comm'r,* 503 U.S. 79, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992); *Overhauser v. United States,* 45 F.3d 1085, 1087 (7th Cir.1995) ("An expense incurred for an asset whose value is exhausted in one year is a current expense; the asset is not depreciable if its useful life is so short."); *Tennessee Carolina Transp., Inc. v. Comm'r,* 65 T.C. 440, 454, 1975 WL 3169 (1975) ("a deduction for ordinary and necessary business expenses is not the same animal as a deduction allowed for depreciation"), *aff'd,* 582 F.2d 378 (6th Cir.1978).

The post–1979 ITC criteria, incorporated into § 39–26–114(11), do not speak explicitly in terms of "capitalized" or "expensed." To qualify for the former federal ITC, either as "recovery property" under § 168 or as other property, the property must be "depreciable." *See* I.R.C. §§ 38, 48, 168 (1985). If a taxpayer fully expenses an item and recovers its full cost in one year, then depreciation is not allowable and the property does not qualify for the ITC. Treas. Reg. § 1.48–1(b) (2001); *Coca–Cola Bottling Co. v. United States,* 203 Ct.Cl. 18, 487 F.2d 528 (1973); *Wellford v. Comm'r,* 50 T.C.M. (CCH) 945 (1985).

Because § 162 and the ITC both allowed for deductions from federal income tax, this rule prevented double income tax deductions for the same property. This is not a problem under the state taxation scheme relevant here, because, while an item may be expensed for purposes of an income tax deduction, the exemptions in §§ 39–26–114(11) and 39–30–106 are from sales and use taxes, not from income tax. However, this does not alter the fact that the definition of the term "depreciable" excludes expensed property.

 The ordinary meaning of the term "expensed," then, refers to taking a deduction in the current year and usually refers to property with less than a one-year useful life. Once an election is made to expense property, the property loses its depreciability for purposes of the ITC and therefore does not meet the definition of § 38 property. *Coca–Cola Bottling Co. v. United States, supra.* Thus, under the general machinery exemption contained in § 39–26–114(11)(d), which incorporates § 38, no exemption is available for expensed machinery because such machinery is not depreciable.

 However, § 39–30–106 was amended to allow an exemption for machinery in an enterprise zone "whether or not such purchases are capitalized or expensed." Read alone, the exemption contained in § 39–30–106 does not require that property be depreciable and is therefore broader than the exemption allowed in the rest of the state by § 39–26–114(11).

Giving effect to the conflict provisions of §§ 39–26–114(11) and 39–30–106, this inconsistency is resolved by allowing § 39–30–106, by its terms, to govern. Thus, while the ITC depreciability and useful life requirements remain in place for purchases of machinery outside of an enterprise zone, the "capitalized or expensed" language in § 39–30–106 prevents those requirements from being applicable to purchases within an enterprise zone.

### 2.

The Department argues that, regardless of our statutory interpretation, the supreme court's decision in *Colorado Department of Revenue v. Cray Computer Corp., supra,* must be read to hold that the language in § 39–30–106 is consistent with a three-year, and impliedly a one-year, useful life requirement. We disagree. *Cray Computer* is distinguishable.

*Cray Computer* involved another exemption requirement imposed by the condition in § 39–26–114(11) that purchases qualify for

the federal ITC—a $150,000 limit on purchases of used machinery. The taxpayer argued, and a panel of this court agreed, that this ITC limitation was inconsistent with the purpose of the enterprise zone sales tax exemption to provide incentives to businesses located within one of the zones. The supreme court reversed. It first noted that there was no express inconsistency between the enterprise zone sales tax exemption and the ITC limitation for purchases of used machinery. It then held that not every limit on incentives is inconsistent with the purposes of the Enterprise Zone Act and that favoring purchases of new, rather than used, machinery was consistent with the goal of fostering economic growth in the enterprise zones.

Here, in contrast to *Cray Computer*, there is an express inconsistency between the one-year useful life or depreciability requirement and the enterprise zone sales and use tax exemption. Specifically, the enterprise zone exemption language, "whether or not such purchases are capitalized or expensed," eliminates any useful life or depreciability limitation.

### C.

■ As a separate argument, the Department contends that its interpretation of § 39–26–114(11)(d), specifically a three-year useful life requirement, was approved by the General Assembly when it declined to adopt a proposed amendment eliminating the reference in § 39–26–106 to that section. The Department also argues that its interpretation of the statutes is entitled to deference. Again, we disagree.

### 1.

■ When a legislature reenacts or amends a statute without repealing a long-standing agency interpretation, it is persuasive evidence that the legislature intended the agency interpretation to remain in effect. *Hewlett–Packard Co. v. State Dep't of Revenue*, 749 P.2d 400 (Colo.1988). Here, however, the General Assembly did not amend or reenact § 39–26–114(11)(d). And, while the General Assembly declined to remove from § 39–30–106 the incorporating reference to the ITC requirements contained in § 39–26–114(11)(d), the Department's interpretation of § 39–30–106, at the time of its proposed amendment, did not include reference either to the ITC or three-year useful life requirements. *See* 1 Code Colo. Regs. 201–13 (1989).

Moreover, discussion by the General Assembly of that proposed amendment to § 39–30–106 did not specifically reference a three-year useful life requirement but referenced only a distinction between capitalized and expensed items. The representative from the Department described the effect of eliminating reference to § 39–26–114(d) as follows:

> One of the items, probably the biggest change in that, I believe, is 11(d) which says that the items must qualify for what would be the investment tax credit. Basically, that would be items held for a substantial period of time, capitalized items; and this amendment would allow items that are expensed and written off immediately for income tax purposes to qualify for this exemption.

Hearings on H.B. 89–1349 before the Senate Committee on Finance, (Apr. 11, 1989). The only issues raised by that proposed amendment were identified as whether expensed items would qualify, whether items used indirectly in manufacturing would qualify, and whether any change would be retroactive or prospective. Although that proposed amendment was not adopted and the final bill did not delete reference to § 39–26–114(11)(d), the final version did add the "capitalized or expensed" language to § 39–30–106 that is inconsistent with a useful life requirement. *See* 1989 Colo. Sess. Laws, ch. 341 at 1523.

The legislative history of the final amendment to § 39–30–106, which ultimately added the "capitalized or expensed" language, supports the interpretation that the term "expensed" was meant to include assets with less than a three-year useful life. *See* Hearings on H.B. 89–1349, *supra,* (Apr. 27, 1989). Testimony at the hearing did not include any mention of a three-year useful life requirement. Statements made by a representative from the Department indicated that the

amendment would permit an exemption for short-lived assets.

> [Revenue Dept.]: All this is saying is that they can have exemptions if they expense it, as opposed to having to qualify for the old investment tax credit, or basically having the items capitalized. That's what it is in a nutshell.
>
> Senator Mendez: So those are items that are shorter lived; they're not really machinery, they're sort of—less part of it. [Revenue Dept.]: Yeah, generally speaking that would be correct.
>
> Senator Considine: Generally speaking that's right, but remember that American business has made a bet out of useful lives and been wrong a great deal of the time because of technological change. And the piece of equipment that you bought 5 years ago that had a 10 year physical life may have had a much shorter functional life because of changing technologies.

The only mention of a three-year useful life requirement appears in a printed handout included in the Staff Summary of the April 27, 1989 hearing and indicates that such a requirement would not apply to the § 39–30–106 exemption. While the Department now disputes its origin, typed initials and a handwritten note on the bottom of the page attribute the sheet to the Department of Revenue, and statements made during the hearing are consistent with that attribution. The handout describes the effect of the proposed amendment in the following terms:

> The allowance of the sales/use tax exemption for *expensed* items will likewise have far reaching impact. Whereas, under current law qualifying items must be depreciated over at least a 3 year useful life. This provision allows the exemption for parts, tools, and machines that have limited useful lives (days or hours) apparently contrary to the original provisions of the law. This provision would allow items such as drill bits, nondurable parts, short-lived items, molds, dies, etc. to be exempt from tax.

## 2.

The Department also argues that its current interpretation of the statutes, incorporating only the amendments up to 1979 and including the three-year useful life requirement, is entitled to deference.

However, in addition to being contrary to the language of the statutes, this interpretation has not been consistently asserted. After the "capitalized or expensed" language was added to the statute, the Department of Revenue Regulations implementing § 39–30–106 were first amended in 1992. The amended regulation stated, in part:

> Machinery, machine tools, and parts purchased prior to June 7, 1989 [the effective date of the "capitalized or expensed" amendment to § 39–30–106] did not qualify for this exemption unless it/they were capitalized on the taxpayer's books and met the definition of "qualifying property" as contained in section 48 of the internal revenue code as such section existed prior to the enactment of the "Revenue Reconciliation Act of 1990."

1 Code Colo. Regs. 201–13, Regulation 39–30–106(1) (amendments subsequent to 1992 have not altered the quoted language). By negative implication, purchases made after June 7, 1989 qualify for the exemption even if they are not capitalized and do not meet the definition of "qualifying property." Moreover, the regulation makes reference to § 48 "as such section existed prior to the enactment of the 'Revenue Reconciliation Act of 1990.'" Although the Department now challenges taxpayer's assertion that the "as amended" language incorporates amendments up to 1986, when the 1954 Internal Revenue Code was superseded, this regulatory interpretation implies that even later amendments were incorporated into § 39–26–114(11)(d).

Furthermore, while the Department argues that its position is clearly articulated to taxpayers, Regulation 39–30–106 instructs taxpayers wishing to claim the exemption to submit the Department's Form DR 1191, captioned "Sales Tax Exemption on Purchases of Machinery and Machine Tools." The instructions to that form, however, are internally inconsistent in their statement of the requirements for the enterprise zone exemption. While the "general instructions"

state that equipment purchased for use in an enterprise zone "must still meet the basic investment tax credit requirement of having a three-year useful life if expensed," the "Instructions for Businesses Located in an Enterprise Zone" state that the property "must be of a nature that would have qualified for federal investment tax credit (ITC) as ITC existed in 1986." However, by 1986 there was no longer a three-year useful life requirement imposed on property that met the definition of "recovery property" under § 168.

## II.

■■■ The Department also contends that, pursuant to § 29–2–105 and the reasoning of *Howard Electrical & Mechanical, Inc. v. Department of Revenue,* 771 P.2d 475 (Colo. 1989), the special districts have the power to impose a use tax on machinery that is exempt from state use tax. Again, we disagree.

RTD's general taxing authority is contained in § 32–9–119(2)(a), C.R.S.2001, which gives RTD the authority to impose a sales tax "upon every transaction or other incident with respect to which a sales tax is now levied by the state, pursuant to the provisions of article 26 of title 39, C.R.S.," with exceptions not relevant here. Additional taxing authority is provided to RTD in § 29–2–105, relied upon by the Department. That section contains the requirements for any tax ordinance or proposal of an incorporated town, city, or county and states that such entities may exempt machinery described in § 39–26–114(11), but that they must do so explicitly. Section 29–2–105(1)(d) then adds, "The regional transportation district may, in its discretion, continue to levy a sales tax … on purchases of machinery or machine tools, as provided in section 39–26–114(11), C.R.S."

The authority of the Scientific and Cultural Facilities District and the Baseball District to impose taxes on the type of machinery involved here is derivative of any authority granted to RTD. Sections 32–13–107(1)(a)(I), 32–14–114(1)(a), C.R.S.2001.

In *Howard Electrical & Mechanical, Inc. v. Department of Revenue, supra,* the court addressed the scope of RTD's taxing power under § 32–9–119(2). It determined that, because the General Assembly granted RTD

power to impose a sales tax pursuant to article 26 of title 39, rather than limiting it to part 1 of article 26, RTD also had the power to impose a use tax under part 2 of article 26.

The Department contends that, under *Howard Electrical,* wherever the special districts are expressly granted authority to impose a sales tax, they are also granted implied authority to impose a use tax. The Department therefore argues that because § 29–2–105 provides that the special districts may impose a sales tax on machinery exempt from state sales tax, it also allows them to impose a use tax on machinery that is exempt from state use tax.

Unlike the grant in § 32–9–119(2), however, § 29–2–105 does not authorize the special districts to impose taxes on property that is exempt from state sales tax under all of article 26. Instead, the districts are limited to imposing sales tax only on machinery that is otherwise exempt under § 39–26–114(11). While article 26 includes both sales and use taxes, § 39–26–114(11) provides only for a sales tax exemption. The corresponding use tax exemption is found in § 39–26–203(1)(y). Section 29–2–105 does not include a provision allowing the districts to impose a tax on machinery exempt under § 39–26–203(1)(y). Moreover, § 29–2–105 itself is limited to a sales tax. A corresponding use tax provision is contained in § 29–2–109, C.R.S.2001, which contains no grant of authority to RTD.

Generally, RTD is limited to imposing a tax on transactions taxed by the state. Section 32–9–119. While § 29–2–105 grants RTD additional power to impose a sales tax on items otherwise exempt from state taxation under § 39–26–114(11), it cannot be extended by construction to grant RTD authority to tax transactions exempt from state taxation under other provisions such as § 39–26–203(1)(y) or § 39–30–106(1)(a).

Therefore, we agree with the trial court that the special districts do not have the authority to levy a use tax here.

The judgment is affirmed.

RULAND and DAILEY, JJ., concur.